BENSON DIXON, A MINOR WITHOUT GENERAL OR TESTAMENTARY GUARDIAN APPEARING HEREIN BY HIS DULY APPOINTED NEXT FRIEND, MILDRED S. DIXON v. FRED PAGE LILLY, JR.

(Filed 23 May 1962.)

**Automobiles §§ 34, 41m—**

Evidence tending to show that a ten year old boy, on a dark night, suddenly ran onto the highway and collided with the right front fender of defendant's truck, that the impact occurred on the paved portion of the road some two and one-half feet from the edge, and that the view of the boy was obstructed by a tree and undergrowth, without evidence that the truck was being operated at excessive speed and without allegation that the truck was being operated without lights, *is held* sufficient to exonerate the defendant driver from liability under the "sudden appearance doctrine."

APPEAL by defendant from *Gambill, J.,* September Term 1961 of MONTGOMERY.

This is a civil action instituted on 22 November 1960 by Benson Dixon, a minor, by his next friend, Mildred S. Dixon, against the defendant Fred Page Lilly, Jr., to recover damages from the defendant on account of personal injuries alleged to have been sustained on 11 July 1960 by Benson Dixon, then ten years of age, when he was struck by a truck owned and operated by the defendant.

The plaintiff alleged: " * * * (T)he defendant approached from the north, headed south, driving his * * * 1956 2-1/2 ton GMC truck at a high, reckless and dangerous rate of speed, and as he approached near the plaintiff, who was on the shoulder of said highway next to the neighbor's yard, the defendant suddenly lost control of his truck, swerving the same to his right and violently striking the plaintiff as he was walking along the edge of the shoulder of said highway and seriously and permanently injuring the plaintiff as hereinafter more fully alleged."

The defendant filed an answer in which he denied any negligence in the operation of his truck and in which he alleged that the accident was unavoidable on his part in that the Dixon boy, in the nighttime, suddenly ran from an obscured place into the highway and against the right front fender of defendant's truck. Defendant further alleged that the presence of the plaintiff in the vicinity of the highway was not known to him and could not have been reasonably foreseen, and that the appearance of the plaintiff was sudden, without warning, and unanticipated and unforeseeable on the part of the defendant.

The plaintiff's evidence is to the effect that the accident occurred on the west side of the paved portion of Highway No. 1346, four-tenths of a mile north of the corporate limits of the Town of Star, North Carolina, in front of a residence occupied by a Mrs. Norman. Rural Road No. 1346 intersects U. S. Highway No. 220 approximately 300 feet south from the point where the accident occurred. This road runs generally north and south for a distance of a quarter of a mile. There are three houses and a church on the west side of this road. On the opposite side of the road and to the north of the Norman home there are four houses and a service station. The service station on the east side of the road is the nearest to the place where the accident occurred. The four houses are located to the north of the service station. The Dixon house, where the plaintiff lived, is the nearest building to the Norman home on the west side of the road but is located 175 to 200 feet north thereof, and the service station on the opposite side of the road is 200 feet north of the Norman home.

The evidence tends to show that it is 43 feet from the edge of the pavement to the edge of the front porch of the Norman home; that a large oak tree, 14 inches in diameter, is located a little to the north of the center of the Norman home and five feet from the western edge of the paved portion of the road. The investigating Highway Patrolman, in describing this tree, said: "The branches are low to the ground and the top of the tree has been topped off. Those branches extend over the west shoulder of the road and onto or over the hard-surfaced part of the road." The testimony of this witness further

tended to show that at the time of the accident there was an undergrowth extending up to the shoulder of the road north of the Norman house; that this undergrowth was as much as head high; that a person going south on this paved road, "about the time he starts getting out of the curve, the bushes and shrubbery are to his right. * * * You can see the entire road opposite the tree from a point 175 feet north, but from a point 175 feet north, you could not see into the yard at the Norman house. The driver of a vehicle going south can see the whole yard at the Norman house when he gets to the edge of the bushes (at the corner of the Norman lot), but he can see objects in the yard, or a car, something that large or tall, farther back than the edge of those bushes." The evidence further tends to show that the shoulder of the road is about five feet wide.

There were no markers indicating a speed zone in the area. The plaintiff offered no evidence in support of his allegations of excessive speed. The defendant's allegations in his answer were to the effect that he was operating his 1956 model 2-1/2 ton GMC truck in a southerly direction at a speed not in excess of 25 miles per hour, about 9:00 p.m. on 11 July 1960, when the accident occurred; that his lights were on bright and the brakes were in good condition. The defendant offered evidence in support of these allegations and that he did not know the plaintiff was anywhere in that vicinity before he ran from behind the tree.

The evidence further tends to show that the plaintiff collided with the right front fender of defendant's truck approximately 2-1/2 feet from the western edge of the pavement, somewhere between nine and 15 feet south of the oak tree referred to herein, and that the tire marks or skid marks of the truck made only by its right rear wheels began a little south of the oak tree and continued 35 feet. The fender with which the plaintiff came in contact was about 15 feet in front of the right rear wheels.

Mrs. Norman testified that she saw the accident from a front window of her house; that there was a small yellow light, 75 watts, burning on her porch; that she was looking into the dark; that it was a dark night. She testified: "I didn't see the truck coming at all. I didn't notice any lights on the truck, it was done so quick. I did not observe anything coming prior to the time I saw the truck hit the boy." On cross-examination, this witness said: "I saw the Dixon boy running toward the road. * * * He was in my yard at the time I first saw him running, and then he ran on past the tree and got up to the edge of the road. * * * He weren't up close to the tree. * * * (H)e was more down south; when he started to run, he just run right on, right straight ahead, and the truck hit him. Q. Well, he ran right into the

right front fender of the truck, didn't he? A. Yes, it was along on the front fender."

The plaintiff testified that he didn't see any lights. " * * * I was about three feet away from the road, and I took off and started running. I made about a step out in the road starting to run * * *. Before I got to the paved portion of the road, I stopped and looked. I reckon I was about two or three feet from the paved portion of the road when I stopped. I did not see anything coming. I looked both ways. And I started as if I were going to run, and I made about two steps in the road * * *, like I was going to run. The next thing I remember I was in the Troy hospital."

Mr. Register, the operator of the service station, testified that the lights from his service station did not cast any light in the area where the collision occurred; that he went to the scene of the accident a few minutes after it occurred; that it was dark; that Benson's body was about 15 feet south of the tree; that someone had a flashlight that was used to see the body. This witness further testified: "It was so dark in the road that I could just vaguely see the boy when I walked up there."

There is no evidence to the effect that the yellow light on the front porch of Mrs. Norman's house lighted the highway to any extent.

The defendant moved for judgment as of nonsuit at the close of plaintiff's evidence and renewed his motion at the close of all the evidence. The motions were overruled.

The case was submitted to the jury on a charge admittedly free from error.

From the judgment entered on a verdict in favor of plaintiff, the defendant appeals, assigning error.

*Charles H. Dorsett for plaintiff appellee.*
*Richard L. Brown, Jr., D. D. Smith for defendant appellant.*

DENNY, C.J. The sole question for decision on this appeal is whether or not the court below erred in failing to sustain the defendant's motion for judgment as of nonsuit.

The plaintiff alleged in his complaint that the "defendant failed to sound a horn or to use any other warning device or to give any adequate or timely signal or warning to this plaintiff of the defendant's approach, or intended course * * *." However, plaintiff did not allege that the defendant's truck was being operated without lights.

Moreover, there is no evidence tending to show that the defendant was operating his truck at an excessive rate of speed or that the de-

fendant lost control of his truck and struck the plaintiff while he was walking along the shoulder of the road, as alleged in the complaint.

The plaintiff's evidence clearly establishes the fact that the contact between the truck and the boy occurred on the paved portion of the road and the tire or skid marks on the pavement after the collision tended to show that the driver of the truck pulled his truck to the left in an effort to avoid colliding with the plaintiff, instead of swerving his truck to the right as alleged in the complaint. Mrs. Norman testified: "He (the plaintiff) was in my yard at the time I first saw him running. * * * (W)hen he started to run, he just run right on, right straight ahead, and the truck hit him." The testimony of this witness and that of the plaintiff fixed the point of collision on the paved portion of the road.

The evidence discloses that after the collision there were two dents in the right front fender of the truck, one on the right side of the fender just back of the right front headlight, and the other on the lower part of the fender just above the right front wheel.

We think the plaintiff's own testimony supports the conclusion that he ran onto the paved portion of the road and against the right front fender of the truck.

In our opinion, the evidence disclosed on the record is sufficient to exonerate the defendant from liability under the "sudden appearance doctrine," or that, insofar as the defendant is concerned, the plaintiff was injured as the result of an unavoidable accident — deplorable as it is — for which the defendant may not be held liable for damages. *Knott v. Transit Co.,* 231 N.C. 715, 58 S.E. 2d 696; Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), Vol. 2A, Section 1498. *Cf. Register v. Gibbs,* 233 N.C. 456, 64 S.E. 2d 280.

The above citation in Blashfield says: "Drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. Accordingly, a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not reasonably be foreseen. He is not required to anticipate the appearance of children in his pathway, under ordinary circumstances, from behind parked automobiles or other obstructions.

"Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him."

Taking all the evidence into consideration in the light most favorable to the plaintiff, and giving him the benefit of every reasonable inference to be drawn therefrom, we are unable to agree that it is sufficient to establish actionable negligence on the part of the defendant. *Kennedy v. Lookadoo,* 203 N.C. 650, 166 S.E. 752; *Fox v. Barlow,* 206 N.C. 66, 173 S.E. 43; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661; *Knott v. Transit Co., supra; Brinson v. Mabry,* 251 N.C. 435, 111 S.E. 2d 540; *Brewer v. Green,* 254 N.C. 615, 119 S.E. 2d 610; *Henkelmann v. Metropolitan Life Ins. Co.,* 180 Md. 591, 26 A. 2d 418.

The judgment of the court below is

Reversed.