FRANCES G. HAMILTON, ADMINISTRATRIX OF MICHAEL EUGENE HAMILTON, DECEASED v. ROBERT NEIL McCASH AND WIFE, RUTH CRIPPEN McCASH.

(Filed 19 September 1962.)

**1. Automobiles § 14—**

It is negligence *per se* for a motorist to follow another vehicle more closely than is reasonable and prudent with regard to the safety of others, the speed of the vehicle, and the traffic and conditions of the highway. G. S. 20-152 (a).

**2. Automobiles § 7—**

A motorist is under duty to keep a proper lookout in the direction of travel, and will be held to the duty of seeing what he ought to have seen in the discharge of such duty.

**3. Automobiles § 25—**

The rule of a reasonably prudent man requires that a motorist not operate his vehicle at a speed greater than that which is reasonable and

prudent under the existing circumstances and that he not operate it carelessly and unlawfully without due regard to the safety of others.

**4. Automobiles § 34—**

A motorist is under duty to exercise due care to avoid injury to children whom he sees, or by the exercise of due care should see, on or near the highway.

**5. Automobiles § 41m— Evidence of negligence of defendant proximately causing injury to child on highway held for jury.**

Evidence tending to show that defendant motorist was traveling at a speed of some 50 miles per hour, about a car's length behind a preceding vehicle, in approaching an intersection duly marked by a sign and by yellow, no-passing lines painted on the center of the highway, that a nine-year old boy was riding a bicycle on the right shoulder approaching the intersection, that defendant's view of the boy was obstructed by the preceding vehicle which she was following too closely, that the driver of the preceding vehicle, upon apprehending that the boy was losing control of his bicycle, sounded his horn and decreased speed, and, in order to avoid striking the child, ran off the road on the left, and that defendant motorist did not see and could not have avoided striking the child after the child suddenly turned left onto the highway, *is held* sufficient to be submitted to the jury on the issue of defendant motorist's negligence as a proximate cause of the injury.

**6. Negligence §§ 16, 26—**

Since a nine-year old boy is rebuttably presumed incapable of contributory negligence, nonsuit may not be entered on the ground of such child's contributory negligence.

**7. Automobiles § 65f—**

Where the evidence of negligence on the part of defendant driver is sufficient to be submitted to the jury and there is evidence that the vehicle was registered in the name of the other defendant, plaintiff is entitled to go to the jury against such other defendant by virtue of G.S. 20-71.1(b).

APPEAL by plaintiff from *Mintz, J.,* April 1962 Term of MARTIN.

Civil action to recover damages for the wrongful death of a nine-year-old boy, allegedly caused by the actionable negligence of the defendants, Robert Neil McCash, and wife, Ruth Crippen McCash, in striking and running over him with an automobile driven by the *feme* defendant and owned by the male defendant, her husband.

The defendants in their answer deny any negligence on their part, and plead as a further answer and defense that if it should be found at the trial they were negligent in the operation of the automobile, then plaintiff's intestate was guilty of contributory negligence. And the defendants for further answer and by way of defense aver that if it should be shown at the trial they were guilty of actionable negli-

gence, then the McLean Trucking Company was also guilty of actionable negligence in the operation of its truck in causing the death of plaintiff's intestate, and they pray that McLean Trucking Company be made a party defendant by virtue of G.S. 1-240 as a joint tort-feasor for the purpose of contribution. An order was entered by the court making McLean Trucking Company an additional defendant.

McLean Trucking Company filed an answer to plaintiff's complaint substantially admitting its allegations, and an answer to the original defendants' further answer and defense denying any negligence on its part in the operation of its truck, and alleging that if plaintiff's intestate was killed by reason of negligence it was caused by the negligence of the original defendants.

From a judgment of involuntary nonsuit entered, on motion of the original defendants, by the court at the close of plaintiff's evidence, plaintiff appeals.

*R. L. Coburn for plaintiff appellant.*

*James and Speight, by W. W. Speight and William C. Brewer, Jr., for Original Defendants, Robert Neil McCash and Ruth Crippen McCash, appellees.*

PARKER, J.   Plaintiff's evidence tends to show the following facts:

U. S. Highway #64 is a paved road, with dirt shoulders, running eastwardly from the town of Williamston, through or by the town of Jamesville, toward the town of Plymouth. About one-half mile east of the town of Jamesville this highway is intersected on its south side by rural paved road #1552, which enters it in a T-formation, but does not cross it. U. S. Highway #64 on both sides of this intersecting road has pavement 24 feet wide and shoulders 8 feet wide. U. S. Highway #64 west of this intersection is level and straight for about one-half mile, and the same way east for two or three miles. Immediately west of this intersection are two yellow lines on U. S. Highway #64, with a white line between, indicating no passing. On the right shoulder of U. S. Highway #64 traveling east there is a sign 300 feet west of the intersection indicating an intersecting road to the right. Approaching this intersection from the west traveling east there are no obstructions on the shoulders to impair a clear view.

About 11:25 a.m. on 1 August 1961 plaintiff's intestate, Michael Eugene Hamilton, a very smart, healthy, and normal boy nine years old, was riding a bicycle in an eastwardly direction on the right shoulder of U. S. Highway #64, about a foot from the pavement, and approaching the intersection of roads above described. The shoulder the boy was riding on had little ruts or little bumps near the intersection.

Approaching this intersection at the same time with Michael Hamilton was a Ford van truck owned by McLean Trucking Company, and driven by its employee, Willie Bruce Pearce, which was going east on U. S. Highway #64 toward the town of Plymouth. Following closely behind McLean's truck was a Ford station wagon registered in the name of Robert Neil McCash, and driven by his wife, Ruth Crippen McCash. Robert Neil McCash was a passenger in the station wagon. Willie Bruce Pearce called by plaintiff as a witness testified: "I saw Mrs. McCash was on my tail gate, about a car length. She had been driving behind me like that some two or three hundred yards because the yellow line was in our lane of traffic going east." He also testified: "The McCash car had been following me some two to five miles." The maximum speed on U. S. Highway #64 for trucks is 50 miles per hour, 60 miles per hour for passenger cars, and the minimum speed for passenger cars is 45 miles per hour.

Pearce saw Michael Hamilton riding on a bicycle on the right shoulder of the highway going east about 200 yards from the intersection. He reduced his speed from 45 miles per hour to about 35 miles per hour, according to his guess, and blew his horn. When Michael was close to the intersection, Pearce saw his bicycle bumping along on the little ruts or little bumps on the right shoulder near the intersection. He had something under his right arm, and his left hand was on the left handle bar of the bicycle. At that time he was off the seat, between the seat and handle bars, with apparently one foot on the rural paved intersecting road, and looked like he had lost control of the bicycle. When Pearce was within 10 to 25 feet from Michael, Michael and the bicycle cut to the left in front of Pearce, who pulled his truck off the highway to his left into a ditch, missed striking Michael, ran down the ditch 50 or 75 yards, came back on the highway, and stopped. Pearce did not turn on his signal to indicate a left turn, when he cut left into the ditch. Pearce testified on cross-examination by McLean's counsel: "When I first saw the child having difficulty with his bicycle I reduced my speed and blew my horn." Pearce went back to where he "crossed the road," and found Michael between the two front wheels of the McCash station wagon, his head pointed south, feet north, and lying on his left side. Mr. McCash said to Pearce, "you have run over the little boy." Pearce denied it. Pearce testified: "Before I turned off the highway I saw the McCash Ford station wagon tail-gating my truck, about one car length from the tail gate." There was no other traffic on the highway near the scene at this time.

R. C. Sexton arrived at the scene five or ten minutes after the collision. The McCash station wagon was on the left or north lane of

U. S. Highway #64 opposite the intersecting rural paved road, and headed toward Plymouth. He crawled under the McCash station wagon. Michael was back of the front wheel with his head toward the middle of the highway. The wheel was on the bicycle, under the fender. The skid marks led to the McCash automobile. They came from the south side of the highway to where the child was lying.

When other people arrived at the scene, "the tension or spring mechanism" of the McCash automobile was lifted high enough for Darrell Clayton, Jr., and another to go under the automobile and to get Michael out from under the automobile. His shirt was partially torn. The back wheel of the bicycle was under the right front wheel of the automobile. Clayton carried Michael to a hospital in Plymouth. About 4:00 o'clock p. m. the same day Clayton attended a coroner's inquest. At that time he climbed under the McCash automobile, and found up under the chassis some dry blood and a small piece of hair.

Berry W. Parker, a State Highway Patrolman, arrived at the scene about 12:10 o'clock p. m. The defendants McCash told him the station wagon had been moved back two feet from where it came to a stop. Parker found 42 feet of skid marks directly behind the station wagon and two feet ahead of it, which were in the northbound lane of traffic. The last 12 feet of wheel marks were not the same width: the right wheel marks had about a two inch wider marking than the left wheel marks. Parker testified on cross-examination by McLean's counsel:

"The commencement of the station wagon skid marks are seven feet east of where the truck, the dual wheels, went off. The skid marks on the pavement were solid skid marks up to the last 30 feet, then the last 12 feet it was scuffs on the right wheel. At the point where the scuffs began I found some abrasions in the highway where the pavement — metal, scratchings, I call it scratchings and little groovings cut out in the highway and little marks in the highway, grooves. I found small bits of clothing, what I call T-shirt in this area for the last 12 feet this station wagon was traveling."

Parker testified he talked to Mr. and Mrs. McCash and Pearce. Mrs. McCash said she was driving the station wagon at the time: Pearce said he was driving McLean's truck. Mr. McCash's registration certificate showed he was the owner of the station wagon his wife was driving. Parker testified as to the following conversation between Mrs. McCash and himself.

"Mrs. McCash said she was traveling approximately 50 miles per hour and gained up on the truck, going to overtake it, and

I asked her the distance she was traveling, she said 'closely' but she did not give any feet or anything, said, closely behind the truck to overtake it, and said she was headed east and she saw this truck suddenly swerve so she swerved behind it and then she said when she came to a stop she realized there was a child in front of her car and she said that she did not see no child and she had not run over no child, and not run over nobody, she had not run over anything and so I showed her where this blood was, showed her where the body was, the body had been moved. There was a puddle of blood in front of her car and we found hair, some blood stains and some hair up under the front part of her car, under the axle, on the axle, about the oil pan. I examined that hair and it appeared to be that of the child's head. I saw the child's head, it was torn up right bad.

"Mrs. McCash said she first saw the child while it was laying down on the pavement and she applied brakes and slid up to it. Mrs. McCash did not explain why she was driving close behind the truck. She just said she was coming up on it to overtake it is the words she told me."

Parker testified Pearce told him:

"* * * he was headed east, traveling approximately 45 miles per hour. Mr. and Mrs. McCash were present. And he saw a child on a bicycle headed east on the shoulder of the road. As he approached near this bicycle he saw it hit a rough place in the shoulder and started swerving to its left into the right lane of traffic and he said he immediately swerved his truck to the left to avoid the child and said he went across the road and into the left ditch and down this left ditch. Tire marks that he showed me where he made and the marks in the ditch he told me he made that led up to the back of the vehicle he told me he was driving — part of the path to where his vehicle stopped. He told me they were his marks, 80 yards in the left ditch and then back across the highway and 35 more yards and he stopped on the right shoulder."

Dr. E. W. Ferguson saw Michael Hamilton in his hospital in Plymouth about 45 minutes after he was injured. Michael was in dire shock, his respiration was extremely shallow, he had multiple fractures of the skull, with a hole in the top of his skull through which brain tissue was extruding, and his neck was broken. Michael died about 30 minutes after he was admitted in the hospital. In Dr. Ferguson's

opinion the causes of his death were his fractured skull, extensive brain damage, severe concussions, and a broken neck.

This suit was instituted against the original defendants on 30 August 1961.

G.S. 20-152(a) provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, with regard for the safety of others and due regard to the speed of such vehicles and the traffic upon and condition of the highway." A violation of G.S. 20-152(a), which is a safety statute, is negligence *per se,* and if injury or death proximately results therefrom, it is actionable. *Smith v. Rawlins,* 253 N.C. 67, 116 S.E. 2d 184; *Crotts v. Transportation Co.,* 246 N.C. 420, 98 S.E. 2d 502; *Cozart v. Hudson,* 239 N.C. 279, 78 S.E. 2d 881. Among its other allegations of negligence against Mrs. McCash, the complaint avers that she operated the station wagon in violation of G.S. 20-152(a), and that such negligence on her part was a proximate cause of Michael Hamilton's injuries and death.

The complaint also alleges that Mrs. McCash was negligent in operating the station wagon without keeping a proper lookout, and that such negligence on her part was a proximate cause of Michael Hamilton's injuries and death. "It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen." *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330.

The complaint further alleges that Mrs. Cash was negligent in operating the station wagon at a greater rate of speed than was reasonable and prudent under the circumstances and conditions then existing, and that she operated it carelessly and unlawfully without due regard to the safety of others, and that such negligence on her part was a proximate cause of Michael Hamilton's injuries and death. The rule requires a motorist to act as a reasonably prudent man. *Crotts v. Transportation Co., supra.*

It has been repeatedly declared by this Court that a legal duty rests upon a motorist to exercise due care to avoid injuring children whom he sees, or by the exercise of reasonable care should see, on or near the highway. *Pope v. Patterson,* 243 N.C. 425, 90 S.E. 2d 706, and cases therein cited.

A motorist must recognize that young children have less judgment and capacity to appreciate and avoid danger than adults, and that such children are entitled to a care in proportion to their incapacity to foresee, to appreciate and to avoid peril. *Pavone v. Merion,* 242 N.C. 594, 89 S.E. 2d 108, and cases therein cited.

Applying these principles of law to the evidence, it is our opinion that plaintiff's evidence, considered in the light most favorable to her, would permit, but not compel, a jury to find the following facts and draw these reasonable inferences therefrom: Mrs. McCash in the daytime was driving the station wagon on U. S. Highway #64 at a speed of about 50 miles per hour about a car length behind the McLean van truck traveling ahead of her, and had been so driving some two or three hundred yards, before the McLean truck cut sharply to its left off the highway into a ditch to avoid striking Michael Hamilton and his bicycle, who had been riding his bicycle on the south shoulder of U. S. Highway #64 and who when he approached the intersection of U. S. Highway #64 with rural paved road #1552 lost control of his bicycle due to the little ruts or little bumps on the shoulder near the intersection and cut to his left on the highway in front of the McLean truck. That such driving of the station wagon by Mrs. McCash, who was sitting under the steering wheel on the left, obstructed her view ahead and of the shoulder on the highway on her right, and prevented her from seeing Michael Hamilton, a nine-year-old boy, riding his bicycle on such shoulder and losing control of it near the intersection ahead, even if she had been trying to keep a lookout ahead, until the McLean truck cut to its left into the ditch. That Mrs. McCash told the State Highway Patrolman "she did not see no child." That Mrs. McCash was so driving the station wagon at 50 miles per hour, though she had passed by a sign 300 feet west of the intersection indicating an intersecting road to the right ahead, which she saw, or in the exercise of due care should have seen, and was so driving on a highway with two yellow lines on it, with a white line between, indicating no passing, which she saw, or in the exercise of due care should have seen. That such driving of the station wagon by Mrs. McCash was in clear violation of the safety provisions of G.S. 20-152 (a) and was negligence on her part, that by such driving Mrs. McCash could not keep a proper lookout ahead in the direction of her travel, and see persons or vehicles on or near the highway or shoulder ahead, especially children on or near the highway, that she was operating the station wagon at a speed and in a manner that was not reasonable and prudent under the conditions and circumstances then and there existing. That when the McLean truck cut off the highway into a ditch on its left to avoid striking Michael Hamilton, Mrs. McCash was so close to the boy that she could not, by reason of her negligence, stop or turn aside to avoid striking him with her station wagon, even if she had seen him, which she says she did not, and that she ran over him and dragged him under the station wagon some 12 feet. That by reason of her negligent operation of the station wagon as above set forth Mrs. McCash, in the

exercise of the reasonable care of an ordinarily prudent person, should have foreseen that some injury would result from her negligence, or that consequences of a generally injurious nature should have been expected, and that such negligent operation of the station wagon by Mrs. McCash as above set forth was the proximate cause of Michael Hamilton's injuries and death. In brief, plaintiff's evidence, considered in the light most favorable to her, shows a direct causal connection between the negligence of Mrs. McCash in the operation of the station wagon, and the injuries and death of Michael Hamilton.

The cases relied on by appellees are factually distinguishable. For instance, in *Dixon v. Lilly,* 257 N.C. 228, 125 S.E. 2d 426, there was no evidence of excessive speed on defendant's part, or of any other negligence alleged in the complaint.

A compulsory nonsuit on the ground that Michael Hamilton, a nine-year-old boy, was guilty of legal contributory negligence is not permissible. Whether he was capable of contributory negligence presents an issue for a jury, because there is a rebuttable presumption that he was incapable. *Wilson v. Bright,* 255 N.C. 329, 121 S.E. 2d 601.

The judgment of compulsory nonsuit of plaintiff's action against Mrs. McCash was improvidently entered. Consequently, the trial court erred in entering a judgment of compulsory nonsuit of plaintiff's action against Mr. McCash, for the reason that the station wagon was registered in his name, and therefore plaintiff is entitled to go to the jury against him by virtue of the provisions of G.S. 20-71.1 (b). *Hartley v. Smith,* 239 N.C. 170, 79 S.E. 2d 767; *Jyachosky v. Wensil,* 240 N.C. 217, 81 S.E. 2d 644.

Reversed.