HOWARD THURMAN RATLIFF, ADMINISTRATOR OF THE ESTATE OF HOWARD THURMAN RATLIFF, JR., v. DUKE POWER COMPANY.

(Filed 14 December, 1966.)

**1. Automobiles § 8—**

The fact that a truck towing a trailer carrying a 40 foot utility pole, in making a left turn into an intersecting road, necessarily blocks both lanes of the two-lane highway on which it was traveling, does not constitute negligence or wrong doing *per se*.

**2. Automobiles § 24—**

The requirement of G.S. 20-117 that a red flag not less than 12 inches both in length and width should be displayed at the end of a load extending more than four feet beyond the rear of a vehicle traveling during daylight hours is not met by a flag of the statutory dimensions when the top of such flag is draped over the load so that less than 12 inches of the flag hangs perpendicular, and failure to meet the requirement of the statute is negligence *per se*.

**8. Automobiles § 6—**

The violation of a safety statute is negligence *per se* unless the statute provides to the contrary, and such violation is actionable if it is the proximate cause of injury to the plaintiff.

**4. Automobiles § 21.1—**

Vehicles transporting poles in the daytime are exempt from the requirements of G.S. 20-116(e), and therefore during the daytime it is not negligence *per se* to transport without a special permit a 40 foot pole on a trailer.

**5. Automobiles § 8—**

The fact that a driver looks and gives the statutory signal before making a left turn does not necessarily absolve him of negligence in making such turn, but he is also required to use the care a reasonably prudent man would use under like circumstances, and whether the circumstance of making a left turn with a truck pulling a trailer carrying a 40 foot utility pole demands, in the discharge of the duty to use due care, the stationing of some person at the intersection to stop following traffic, is a question for the jury.

**6. Automobiles § 41h—**

Evidence that the driver of defendant's truck was pulling a trailer carrying a 40 foot utility pole, that the warning flag at the end of the pole did not hang perpendicular for the statutory 12 inches, that the driver made a left turn into an intersecting highway without having a person to warn and stop following traffic, and that the following vehicle driven by intestate violently collided with the end of the pole, *held* sufficient to be submitted to the jury on the question of negligence and proximate cause.

**7. Negligence § 26—**

Nonsuit may not be properly entered on the ground of contributory negligence unless plaintiff's own evidence, when considered in the light

most favorable to him, establishes contributory negligence as one of the proximate causes of the injury so clearly as to admit no other reasonable conclusion.

**8. Automobiles § 38—**

The distance traveled by a vehicle after a collision does not establish that the vehicle was traveling at excessive speed prior to the collision when the evidence conclusively establishes that the driver was instantly incapacitated by the collision and that the collision impaled the vehicle upon the end of a 40 foot utility pole which was swinging in his direction of travel consequent to the left turn made by the vehicle pulling the trailer carrying the pole.

**9. Automobiles § 42—**

The evidence disclosed that the driver of a truck pulling a trailer carrying a 40 foot utility pole, having a flag at its end not hanging perpendicular for the statutory 12 inches, made a left turn into an intersecting highway, and that plaintiff's intestate, driving a following automobile, crashed into the end of the pole. There was no evidence that intestate was traveling at excessive speed. *Held:* The evidence does not warrant nonsuit on the ground of contributory negligence.

**10. Trial § 33—**

It is error for the court to state a contention containing an erroneous statement of the applicable law without correcting such error. It is preferable for the court to limit its statement of contentions only to the facts adduced by evidence and to state only the court's view of the legal principles applicable to such factual situation.

**11. Automobiles § 46—**

Where the evidence affirmatively discloses that the vehicle driven by defendant's employee came within the exemption of G.S. 20-116(e) and did not require a special permit, it is error for the court to submit the question of negligence in operating the vehicle without such permit.

**12. Same—**

It is error for the court to charge the law requiring a vehicle making a left turn into an intersecting highway to pass to the left of the center of the intersection when there is no evidence that the driver "cut the corner" at the intersection, or that, if he did so, such act could have been a proximate cause of the collision.

**13. Automobiles § 8—**

Failure of a driver of a truck pulling a trailer carrying a 40 foot utility pole, turning left into an intersecting highway, to drive to the left of the center of the intersection cannot be the proximate cause of an accident occurring when the driver of a following vehicle collides with the end of the pole in such driver's righthand lane of travel.

**14. Negligence § 7—**

The fact that the injury would not have occurred but for an asserted act of negligence does not constitute such act a proximate cause of the injury unless consequences of a generally injurious nature were reasonably foreseeable as a result of such act.

**15. Trial § 33—**

An erroneous instruction in regard to the law in the court's application of the law to the facts in evidence must be held prejudicial, notwithstanding that in other portions of the charge the court in stating the general principles of law gave correct instructions on the point in question.

APPEAL by defendant from *Crissman, J.,* at the March 1966 Session of WILKES.

This is a suit for damages for wrongful death resulting from injuries sustained by the deceased when the automobile driven by him collided with the end of a 40 foot pole being towed along the highway by a truck of the defendant. It is admitted that the truck was then being operated by an employee of the defendant in the course of his employment.

The complaint alleges that the defendant was negligent in that: (1) It failed to display a red flag upon the pole as required by G.S. 20-117; (2) it attempted to make a left turn without seeing that the movement could be made in safety and without a proper signal of such intention; (3) it transported the pole upon the highway without a permit in violation of G.S. 20-119; (4) it blocked both traffic lanes of the highway; (5) it failed to keep a proper lookout; (6) it failed to give warning to persons using the highway, including the deceased, of its operations so blocking the highway; and (7) it attempted to make a left turn without passing beyond the center of the intersection. Other general allegations of negligence, being mere statements of conclusions by the pleader, are not material to this appeal.

The answer denies all allegations of negligence by the defendant, alleges that the negligence of the deceased was the sole proximate cause of the collision and, if not, was contributory negligence, which bars the plaintiff's right of recovery. The deceased is alleged to have been negligent in that: (1) He drove his automobile at an excessive speed; (2) he failed to decrease the speed of his vehicle when confronted with a special hazard; (3) he failed to keep a proper lookout; (4) he failed to keep his automobile under control and bring it to a stop until the defendant's vehicle and pole had left the highway; and (5) followed the defendant's vehicle and pole closer than was reasonable and prudent.

The jury found the issues of negligence and contributory negligence in favor of the plaintiff and awarded damages in the sum of $20,000. From judgment entered upon the verdict, the defendant appeals, assigning as error the denial of its motion for judgment of nonsuit and alleged errors in the charge of the court to the jury.

The defendant offered no evidence at the trial, testimony of its

driver and three other employees being offered by the plaintiff in the form of transcripts of their adverse examinations.

The evidence offered by the plaintiff, in addition to the mortuary table contained in G.S. 8-46, and testimony as to the age, health, abilities and habits of the deceased, may be summarized as follows:

The collision occurred a few minutes before 1 p.m. on a clear day in the town of Roaring River at the right-angle intersection of Highway 268 and an unnumbered road. Highway 268 has a "black top" pavement and was dry.

The defendant's truck was 20 feet long. Attached to it was a two-wheel trailer, 20 feet long, six feet wide and three feet high, which had on it a partial bed for carrying tools. The pole, which was resting on the trailer, was 40 feet long and approximately 12 inches in diameter at the large end. It was fastened to the trailer with a chain one inch in diameter, and extended 10 or 12 feet beyond the rear end of the trailer.

A red flag, somewhat faded from use, bearing upon it the word "danger" in white letters, was attached to the pole. It was not offered in evidence. It was fastened to the pole with a wire running through a hole bored in the pole. The distance from the point of attachment to the end of the pole is variously stated. According to one of the defendant's employees riding upon the truck, the flag was 12 by 12 inches in size and was so affixed to the pole that several inches of its length lay flat on top of the pole, and about eight inches of its length hung downward over the rear end of the pole. Testimony by another of the defendant's employees indicates that the entire length of the flag was visible below the top of the end of the pole. Vibration of the pole in transit would cause the flag to flutter.

The truck, with the foreman of the crew riding in the cab with the driver, and three other employees of the defendant riding in the truck bed, proceeded eastwardly along Highway 268 to the intersection. The highway is straight for at least 600 feet west of the intersection and the pavement is 19 feet wide. Three hundred feet before reaching the intersection, the driver turned on the blinking lights indicating a left turn. There were two of these lights on the rear of the truck and one on the trailer. At that time, the driver looked in his rear view mirror and saw no vehicle behind the truck. Thirty feet from the intersection, he looked into the rear view mirror again and still saw no vehicle following the truck. At the time he turned on the signals indicating the left turn, the truck was traveling 20 miles per hour and the speed was gradually reduced so that when it was 30 feet from the intersection, the truck was traveling 10 miles per hour or less. Upon reaching the intersection, the driver

did not bring the truck to a full stop, but turned to the left so as to proceed along the intersecting road to the north. The effect was to swing the back end of the pole toward the south and thus, in the course of making the left turn, the truck, trailer and pole, in combination, blocked both lanes of travel on Highway 268.

On other occasions, but not on this occasion, the three employees riding in the back of the truck had been instructed to watch for oncoming traffic. No occupant of the truck saw or was otherwise aware of the presence of the vehicle of the deceased until it struck the end of the pole. No one was stationed by the defendant upon the highway at the intersection to warn motorists of the approach and contemplated movement of the truck and pole. The only other witness who saw the collision, a bystander observing the movement of the truck through a store window, did not see the automobile driven by the deceased until it was within five feet of the end of the pole, at which time his attention was directed to it by a "short squeak" of its brakes. Neither the driver nor the foreman had instructed the employees in the back of the truck to watch for the driver as he made the left turn on this occasion.

The pole smashed through the left side of the windshield of the automobile and struck the rear seat. The resulting glass and debris were found on the right lane of Highway 268 for eastbound traffic. The impact broke the chain fastening the pole to the trailer, and the front end of the pole, which had rested upon the trailer, fell off onto the road. It may be inferred from the record that the deceased was instantly killed.

At the moment of impact the truck, itself, had completed the left turn onto the northbound road. Its rear wheels were at the north edge of Highway 268. The trailer was then at about the middle of the highway and the pole extended to about its south edge.

The automobile of the deceased came to rest 137 feet east of the debris and headed back toward the west.

*Deal, Hutchins and Minor for defendant appellant.*
*Moore & Rousseau for plaintiff appellee.*

LAKE, J.   There is no evidence whatever in the record before us to show that the defendant's truck was operated at a speed greater than was reasonable at or before the collision which caused the death of the plaintiff's intestate, nor is there any indication of any failure to give the signal required by statute of the driver's intent to turn left at the intersection.

The fact that, in the process of turning left, the combination of the truck, trailer and pole blocked both lanes of traffic upon the

highway does not constitute proof of negligence or other wrong doing *per se*. To so hold would mean that a truck towing a 40 foot pole could never make a left turn from a two lane highway.

However, the evidence, viewed in the light most favorable to the plaintiff, is sufficient to support a finding that the red flag attached to the pole was no more than 12 inches square, the statutory minimum, and was so affixed to the pole that it lay partially draped upon the top of the pole so that no more than eight inches of its length hung downward.

G.S. 20-117 provides:

> "Whenever the load on any vehicle shall extend more than four feet beyond the rear of the bed or body thereof, there shall be displayed at the end of such load, in such position as to be clearly visible at all times from the rear of such load, a red flag not less than twelve inches both in length and width, except that between one-half hour after sunset and one-half hour before sunrise there shall be displayed at the end of any such load a red light plainly visible under normal atmospheric conditions at least two hundred feet from the rear of such vehicle."

The obvious purpose of the statute is to promote the safety of one following such a vehicle upon the highway. Its clear meaning is that during daylight hours a red flag shall be displayed from the end of such projecting load so that there shall be visible to a user of the highway following the vehicle at least 12 inches of the flag's length and 12 inches of the flag's width. The requirement of the statute is not met by draping over the top of the load a red flag of the required dimensions so that only a fringe of it is visible to one following the vehicle upon the highway.

The violation of a statute which imposes a duty upon the defendant in order to promote the safety of others, including the plaintiff, is negligence *per se*, unless the statute, itself, otherwise provides, and such negligence is actionable if it is the proximate cause of injury to the plaintiff. *Carr v. Transfer Co.*, 262 N.C. 550, 138 S.E. 2d 228; *Murray v. Aircraft Corporation*, 259 N.C. 638, 131 S.E. 2d 367; *Drum v. Bisaner*, 252 N.C. 305, 113 S.E. 2d 560; *Reynolds v. Murph*, 241 N.C. 60, 84 S.E. 2d 273.

In *Weavil v. Myers*, 243 N.C. 386, 90 S.E. 2d 733, this Court said that violation of this statute by failure to display at night a light, such as is required thereby, is negligence. The violation of the statute during the daylight hours, by failure to comply with its requirements applicable to such time, must lead to the same result. It is all the more imperative that the flag be displayed so as to catch the eye of the following motorist when the projecting load is a long

narrow object, such as a utility pole being towed lengthwise along the highway. Without such a warning device, all that is visible to the following motorist is the end of the pole, which is but a few inches in diameter and usually of a color not easily seen against the surface of a black-top highway or the rear of a towing vehicle.

G.S. 20-116 imposes maximum limits upon the dimensions, including length, of vehicles and combinations of vehicles which may be lawfully operated upon the highways of this State without a special permit, issued pursuant to G.S. 20-119. However, G.S. 20-116(e) provides that this length limitation "shall not apply to vehicles operated in the daytime when transporting poles." Thus, it was not unlawful, or negligence *per se*, for the defendant to transport this 40 foot pole along the highway or to make a left turn at an intersection of highways.

In making a left turn, a driver of a motor vehicle is required by G.S. 20-154 to "see that the turn can be made in safety" and to give the specified signal of his intent to turn. G.S. 20-154; *Oil Co. v. Miller*, 264 N.C. 101, 141 S.E. 2d 41. It is not necessarily enough, however, to absolve him from negligence that he looked and gave the statutory signal. A driver must always use the care which a reasonable man would use under like circumstances. The care which is reasonable in making a left turn at an intersection depends, in part, upon the nature and dimensions of the vehicle, or combination of vehicles, to be turned and of the load, if any, projecting from the rear thereof. When the turning vehicle is drawing behind it a 40 foot pole, it is obvious that a left turn at a right angle will involve some swinging of the end of the pole in an arc through part of the intersection. Evidence of such a turn with such a load is sufficient to permit, though not to require, the jury to find that reasonable care for the safety of other users of the highway demands the stationing of some person at the intersection to stop traffic which may otherwise be imperiled by the turn.

The evidence offered by the plaintiff, interpreted in the light most favorable to him, as is required in a motion for judgment of nonsuit, is sufficient to support, though not to require, a finding that the defendant was negligent and that such negligence was the proximate cause, or one of the proximate causes, of the collision and of the death of the plaintiff's intestate.

A judgment of nonsuit may not be entered in an action for wrongful death on the ground of contributory negligence by the deceased, unless the plaintiff's evidence, considered in the light most favorable to him, establishes negligence by the deceased and that such negligence was one of the proximate causes of the collision so clearly as to admit of no other reasonable conclusion. *Young v. R. R.*, 266

N.C. 458, 146 S.E. 2d 441; *Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40; *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360.

The record discloses that no witness saw the automobile of the deceased until it was within five feet of the end of the pole. There is, therefore, no direct evidence as to its speed or as to the manner of his driving. G.S. 20-152 forbids the driver of a motor vehicle to follow another vehicle more closely than is reasonable and prudent, and a violation of this statute is negligence *per se. Hamilton v. Mc-Cash,* 257 N.C. 611, 127 S.E. 2d 214. However, though the mere fact of a collision with a vehicle furnishes some evidence of a violation of this statute, or of failure to keep a proper lookout, *Burnett v. Corbett,* 264 N.C. 341, 141 S.E. 2d 468, the mere proof of a collision with a preceding vehicle does not compel either of these conclusions. It merely raises a question for the jury to determine.

Evidence of the distance traveled after the collision by the automobile of the deceased is to be considered by the jury upon the question of the speed of his vehicle at the moment of the collision. The evidence in this record is not, however, sufficient to compel the conclusion that the deceased was driving at a speed in excess of that which was reasonable under conditions known to him, or which should have been known to him. The evidence shows that in the collision the pole smashed through the windshield and went on through the car, back to the rear seat. The car was thus impaled upon the end of a 40 foot pole which was then in the process of swinging through a 90 degree arc in the general direction of the car's previous travel. The reasonable inference from the evidence is that the driver of the car was instantly incapacitated, if not instantly killed. It would be a question for the jury to determine as to whether the continued forward progress of the deceased's car and its turning back toward the west were due to his speed prior to the collision, or to its being impaled upon and swung forward and around by the pole.

The defendant's exception to the denial of its motion for judgment of nonsuit cannot, therefore, be sustained either upon the issue of negligence or upon the issue of contributory negligence.

Turning to the exceptions by the defendant to the charge of the court to the jury, we find that the learned judge below instructed the jury as follows:

> "The plaintiff alleges * * * that this pole and the trailer and the truck were longer than is provided by law, and that no special permit to allow the driving or the operation of a rig so long as this was exhibited or was used; so the plaintiff has alleged that this amounted to negligence on the part of the Duke Power Company in the operation, and that was a proximate cause of this collision, this accident."

Again, the court instructed the jury:

"The plaintiff says and contends that this rig was in excess of 55 feet in length and that under the law that no person is supposed to have any rig of any kind out on the highway longer than 55 feet long, without a special permit, and that the defendant was negligent in not having that on this occasion."

Once more, the court instructed the jury:

"Now the plaintiff says and contends * * * that the plaintiff [*sic*] had not secured a permit as required in General Statute 20-119, which says that special permits shall be obtained when a vehicle is excessive in size or weight, and that this one was longer than was provided by law; and so the plaintiff says and contends that the defendant was in violation of those statutes and that this was a proximate cause of this collision and what took place."

There is in the charge no suggestion that such contention by the plaintiff as to the law was erroneous. At no point in the charge did the court instruct the jury that G.S. 20-119 has no application to this case since G.S. 20-116(e) exempts from the length limitations vehicles towing poles in the daytime. It is prejudicial error for the court, in its instructions to the jury, to make, even in the form of stating a contention of a party, an erroneous statement of the law applicable to an issue in the case without correcting such error. It would, of course, be preferable for the court, in stating the contentions of the parties, to limit such statement to their respective contentions as to the facts and to state only the court's view of the legal principles applicable to such factual situation.

The court also instructed the jury:

"Now, members of the jury, on this first issue the Court charges you that if you are satisfied from this evidence and by its greater weight * * * *or* if you are satisfied from this evidence and by its greater weight that he [the defendant's driver] failed in making the turn to make it as provided by statute in going out to the center before making the turn, and if you are further satisfied from this evidence and by its greater weight that such negligence or such violation of either of these statutes on the part of the defendant was the proximate cause or a proximate cause, *that is a cause without which the collision would not have occurred,* then it would be your duty to answer the first issue YES." (Emphasis added.)

There are three errors in this instruction. First, there is no evidence whatever in the record to show that the driver of the truck cut the corner at the intersection, and the jury should not have been permitted to decide the first issue on such an assumption. Second, if he did so, it could not have been a proximate cause of the collision, since the plaintiff's evidence shows clearly that it occurred while the end of the pole and his intestate's automobile were in the eastbound lane of Highway 268. Third, the definition of a proximate cause, here given, is incorrect.

An event which is a "but for" cause of another event — that is, a cause without which the second event would not have taken place — is not, necessarily, the proximate cause of the second event. While one event cannot be the proximate cause of another if, had the first event not occurred, the second would have occurred anyway, *Henderson v. Powell,* 221 N.C. 239, 19 S.E. 2d 876, the reverse is not necessarily true. A "but for" cause may be a remote event from which no injury to anyone could possibly have been foreseen. Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which the plaintiff seeks to recover damages. *Nance v. Parks,* 266 N.C. 206, 146 S.E. 2d 24.

The learned judge had, in an earlier portion of his charge, correctly defined proximate cause. However, this subsequent instruction, related as it was to a specific and final summation of what the jury must find in order to answer the first issue in the plaintiff's favor, was reasonably calculated to substitute in the mind of the jury the inaccurate definition of proximate cause for the correct definition previously given.

Finally, the court also instructed the jury:

"If you are satisfied from this evidence and by its greater weight, that * * * *or* that the defendant had not complied with the requirements of the statute to obtain a proper permit for the length of the rig that was being driven, the Court charges you that if you are satisfied from this evidence and by its greater weight that such failure to comply with either of those statutes amounted to negligence, that that failure was such a failure as a reasonable and prudent man would not have been guilty of under the same and similar circumstances, and if you are further satisfied from this evidence and by its greater weight that such failure was a proximate cause, *that is a cause without which the collision would not have occurred,* then it would be your duty to answer the first issue YES." (Emphasis added.)

For the reasons above mentioned, this instruction is erroneous. It incorrectly states the law with reference to the defendant's need for a permit in order to operate this combination of vehicles on the highway, and it incorrectly defines proximate cause.

The defendant's assignments of error with reference to these portions of the court's instructions to the jury must be sustained. Consequently, the defendant is entitled to a new trial.

New trial.