POLY FOX, Jr., By His Next Friend, POLY FOX, Sr., v. RUFUS L. BARLOW.

(Filed 28 February, 1934.)

**1. Automobiles C f—**

A driver of an automobile is required to observe a greater degree of care when approaching small children on the shoulders on a highway.

**2. Same—Evidence held insufficient to be submitted to jury in action to recover for injuries to child struck by car on highway.**

Evidence tending to show that plaintiff, a five-year-old child, was walking on the shoulders on a highway with his mother and that she was holding his hand, and that he was under her immediate control, when suddenly the child broke away and ran across the road immediately in front of defendant's car, without evidence as to defendant's speed immediately prior to the accident or that he was driving at excessive speed upon approaching the scene of the accident, and that upon the child's running in front of the car, defendant swerved the car to the left in an attempt to avoid the injury and struck and injured the child on the left-hand side of the highway, *is held* insufficient to be submitted to the jury on the issue of negligence.

**3. Negligence A e—**

Actionable negligence is not presumed from the mere fact of injury, however unfortunate or severe the injury may be.

**4. Automobiles C b—Evidence held insufficient to be submitted to jury on question of excessive speed in residential district.**

Where there is no definite evidence as to the number of residences at the scene of the accident so as to bring the place within the statutory definition of "residential section," C. S., 2618-A, or "residential district," C. S., 2621(43), and no evidence that the speed of the car was a proximate cause of the accident in suit, the evidence is insufficient to be submitted to the jury on the question of defendant's negligence in exceeding the speed limit prescribed in residential districts, there being no evidence that defendant exceeded the speed limit prescribed for highway travel generally.

Civil action, before *Warlick, J.,* at July Term, 1933, of Catawba.

On 7 January, 1932, in the afternoon about three-thirty or four o'clock, the mother of plaintiff and the plaintiff were walking on Highway No. 10 between Newton and Conover and traveling in the direction of Conover. The defendant, driving a one-seated Ford cabriolet, was traveling from Newton to Conover in the same direction. At that time the plaintiff was five and a half years old. The mother of plaintiff said: "We were on the right-hand side going toward Conover. . . . The school bus and some other cars were passing. They were going in the direction of Newton. . . . After all those cars got by—bus and all—I stopped and looked around and saw this car coming and I waited or was going to wait until this car got by. It was the only car

Fox *v.* Barlow.

that was coming or going, and my little boy jerked loose and he saw his little sister Louise and ran across the highway to her. When I saw the car that struck my boy I was up the highway a piece. We were walking on the shoulder of the highway. . . . My daughter's name is Louise. She came out toward the road and started down the highway, coming to meet us. I know that he started across the highway and got hit, and after that I cannot tell you any more. . . . After those cars passed, my boy jerked loose from me and ran across the road. It was my intention to keep him from running across the highway, but he had never done such a thing before and I didn't think he would do it. He started across the street to see his sister on the other side. His sister had just come from school. . . . He was stricken on the left-hand side of the highway. I don't know how fast Mr. Barlow was going. . . . The child started to cross the highway. The little fellow ran just as hard as he could run. He did not run right in front of Mr. Barlow's car. . . . He was not going straight across. . . . I told Mr. Barlow at the time that no matter whether the child lived or died that he was in no way to blame and I didn't blame him at the time, but I found out later that he was on the wrong side of the road when he hit the child. . . . I changed my mind about what I told him after I found out he was on the wrong side of the road. It just came to me how it was. I didn't know it when I was talking to Mr. Barlow. It never came to my mind which side of the road that car should have been on until after I got to the hospital. . . . I saw Mr. Barlow pick up the child on the left-hand side of the road."

The evidence tended to show that the plaintiff sustained a broken leg, a fractured skull and numerous bruises, and remained in the hospital about two weeks, when he was returned to his home.

Witness for plaintiff said that he was standing inside a filling station and noticed "the car that struck the child coming up the road. . . . When I first saw the car in my opinion it was moving between 35 and 40 miles per hour. . . . Mr. Barlow was about 150 feet from the place of the accident when I first saw him. . . . I don't know what rate of speed it was going at the time of the impact." There was evidence that a dirt road intersected Highway No. 10 near the scene of the accident. The said witness continued "when I saw the man going toward Conover he was about 150 feet from the crossing. It is 35 or 40 feet from the crossing to where the accident occurred. . . . That crossing is used right smart. It is a regular street. It is not in the corporate limits of Newton or Conover."

Another witness for plaintiff, a civil engineer, testified that "beginning about the Log Cabin Service Station I measured down the highway a thousand feet. I found eight residences within that distance. . . .

I ·did not count how many houses are within 1,000 feet north of the intersection toward Conover. . . . If you were a stranger and not acquainted with that country and got in your car and started toward Conover, you would have to get rather close up to that intersection before you would know there was one there. I don't remember seeing any sign or signal to show there is an intersection. . . . I can't say that for a distance of 300 feet either way from the intersection it is mainly unoccupied. . . . For a distance of 300 feet north and 300 feet south on either side there may be a good deal more land unoccupied by houses than there is occupied."

There was testimony tending to show that the collision occurred about 100 feet from the intersection and that certain skid marks on the pavement began about the center of the road going toward Conover and extended toward the left-hand side of the road. Describing the marks, witness said: "I don't mean skidded. You could see where he started to stop. I would not be right positive how far he skidded, but around 25 or 30 feet. The skidding was from the direction of left from the right."

The defendant testified that he was driving his car in a careful manner and saw the plaintiff and his mother walking in the same direction in which he was traveling; that they stopped and were standing on the shoulder of the road, "and just as he got within a little way of them, those two cars passed, and the child pulled loose from its mother and jumped suddenly in front of me, some six or eight feet in front of me. I cut to the left as soon as I could in order to miss the child and its mother. I did not go straight because the mother was there. She was reaching out like she was going to catch the child, and I thought I could turn to the left and miss them. When I hit him I was running across the road. I picked him up and took him in the house and put him on the bed. . . . Just before I passed the intersection I cut my speed to about 20 miles. Before that I was running 25 or 30, and I didn't gather any more speed until the child jumped in front of me."

Issues of negligence and damages were submitted to the jury and answered in favor of the plaintiff.

From judgment upon the verdict assessing damages in the sum of $1,250, defendant appealed.

*Jos. A. Taylor and Self, Bagby, Aiken & Patrick for plaintiff.*
*Warren & Crisp and Newland & Townsend for defendants.*

Brogden, J. Experience demonstrates that children of tender years in or about streets and highways are likely in obedience to impulse to run into or across such streets and highways suddenly and without

Fox *v.* Barlow.

warning. Motorists must know and recognize this fact and govern themselves accordingly else the criminal and civil laws must be called upon to turn professor.

However, in the case at bar, the child was standing on the shoulder of the highway, under the immediate control of the mother. She held him by the hand. She saw the approach of defendant's car and stopped to wait for it to pass. Obviously it was near at hand. Suddenly the child jerked loose from the mother and started to run across the highway to meet his sister on the opposite side of the road. The defendant turned to the left and struck the child on the left hand side of the road, inflicting serious and permanent injuries. There was no evidence of the speed of the car immediately preceding the act of the child in running across the road. The road was straight for 600 or 800 feet. There is no evidence as to how close the car was when the child started across the highway except the evidence of defendant, who testified that the child jerked loose and started across the road when his car was not more than six or eight feet away.

Such is the story told by the testimony.

Actionable negligence is not presumed from the mere fact of injury, however unfortunate or severe the injury may be. So, in order to show an excessive speed the plaintiff invoked the principle that the accident occurred in a residential district. C. S., 2618(a) prescribes a speed of twenty miles per hour in a residential section and undertakes to define the residential section on highways by providing that "residential sections shall be construed to begin at the first point between which point and a point 1,000 feet away on said road or highway there are as many as eight residences." C. S. section 2621(43) (t), defines residential district as "the territory contiguous to a highway not comprising a business district when the frontage on such highway for a distance of 300 feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business." The trial judge expressed doubt as to which of these antagonistic definitions should be adopted, but regardless of the conflict or of how much the statutes swear at each other, they have no bearing on this case. As we interpret the record, there is no definite evidence of the number of residences measured from the point of the collision or as to whether in a space of 300 feet the surface of the earth "is mainly occupied by dwellings or by dwellings and buildings in use for business." While various measurements were submitted by several witnesses, the vital point is covered with fog and uncertainty. Moreover, there is no evidence that the speed of the car was the proximate cause of the injury. Consequently the motion for nonsuit should have been allowed.

Reversed.