W. D. YOKELEY, ADMINISTRATOR OF THE ESTATE OF GARY YOKELEY, v. KATE R. KEARNS.

(Filed 19 May, 1943.)

**1. Automobiles § 12b—**

When one drives an automobile on a public street and sees, or by the exercise of due care should see, small children on or near the traveled portion of the street and apparently intending to cross, it is his duty to use proper care with respect to speed and control of his car,' the giving of timely warning and the maintenance of vigilant outlook, to avoid injury, recognizing the likelihood of their running into or across the street.

**2. Automobiles § 18g—**

In an action for damages based on negligence, resulting in the death of plaintiff's intestate, a small boy under eight years of age, where plaintiff's evidence tended to show that his intestate was struck with great force by defendant's automobile and killed, in the middle of a 39-foot city street, free from other traffic at the time, as he attempted to cross the street on his way from school, that the horn was not sounded, that the car traveled (carrying the boy's body) 126 feet after hitting the boy before stopping, and the owner was heard to say at the scene of the accident, "I told the driver to slow up," a judgment as of nonsuit was reversible error.

APPEAL by plaintiff from *Armstrong, J.,* at November Term, 1942, of GUILFORD. Reversed.

This was an action for wrongful death of plaintiff's intestate alleged to have been caused by the negligence of the defendant in the operation of an automobile.

The evidence offered by plaintiff tended to show that his intestate, a boy not quite eight years of age, while attempting to cross a street in High Point, was struck and killed by defendant's automobile then being

driven for her by her employed driver. The unfortunate happening occurred shortly after noon, 17 December, 1941, near the intersection of Idol Street, on North Main Street. It appears that plaintiff's intestate, the Yokeley boy, on his way home from school, with a number of other children, had come across an open field which lay immediately east of Main Street, and had reached the east side of Main Street, apparently intending to proceed across Main Street and thence westwardly along Idol Street to his home on the latter street. Idol Street enters Main Street from the west, but does not cross. Beyond, to the east and approximately in line with Idol Street, was a path leading across the field to Johnson Street School, some 1,100 feet distant.

Defendant's automobile, occupied by herself and daughter, and driven by her chauffeur, was proceeding south along Main Street. Near the intersection of Idol Street the boy was struck and killed. The speed of automobiles in that section was limited to 25 miles per hour. Main Street was paved 39 feet from curb to curb. At Idol Street there had been painted on the pavement the words "Slow, School Zone," but at this time as the result of traffic the words had been worn quite dim. As indicating the speed of the automobile, it appeared that from the point at the intersection of Idol Street where the boy's hat and some blood were found to the point where the car stopped and the crushed body of the boy fell from the fender to the ground was 126 feet; that the grillwork on the front of the automobile was broken in, and the glass of the left headlight was broken, and the shattered glass found scattered nearly as far back as where the hat was picked up. The noise of the impact when the boy was struck was very loud, and the body was badly broken and mangled, death ensuing instantly. Immediately after the collision the defendant Mrs. Kearns was heard to say, "I told the driver to slow up," and the witness thought she added that she told him to stop, that he would hit somebody. Where the boy's hat was picked up was in the middle of Main Street in front of Idol Street, and there were spots of blood along the middle of the street to where the car stopped just to the right of center of the street. The body was lying in the center. There was no other traffic on the street at the time, and there were no parked cars on either side of the street. The horn was not sounded. To the east and to the driver's left on approaching the place of collision was an open level field without houses or obstruction to the view. A witness who passed this place in his automobile, going north on Main Street, shortly before the accident, observed the Yokeley boy and another small boy come from across the field to the east side of Main Street and cross the curb into the street and stop at the witness' warning signal. Another witness, walking, came up Idol Street from the west and turned south on Main Street. She testified she saw the Yokeley boy and a group of small

boys come to the east curb of Main Street nearly opposite the intersection of Idol Street and stop, the Yokeley boy in front. She was not observant of the approach of the defendant's automobile, or of exactly what happened, but she saw the boy's hat in the air, heard the "terrible noise" of the impact, and caught a glimpse of the rear of the automobile as it passed, and saw it stop at the point where the body fell to the ground.

It was admitted in the pleadings that defendant was in control of the automobile and that it was being driven by her driver as her agent, acting at the time within the scope of his employment. It was also stipulated that the plaintiff's intestate came to his death as a result of injuries received in the collision referred to in the complaint.

At the close of plaintiff's evidence defendant's motion for judgment of nonsuit was allowed. From judgment dismissing the action, plaintiff appealed.

*C. A. York and Gold, McAnally & Gold for plaintiff.*
*Carter Dalton and Rupert T. Pickens for defendant.*

DEVIN, J. The only question presented by this appeal is whether the plaintiff's evidence considered in the light most favorable for him was of sufficient probative force to require its submission to the jury. *Wall v. Bain*, 222 N. C., 375.

Was there evidence of negligence on the part of the defendant which proximately caused the injury and death of plaintiff's intestate? An examination of the record of the testimony offered below leads us to the conclusion that the question posed must be answered in the affirmative. Giving due consideration to the facts in evidence and to the inferences of fact reasonably deducible therefrom, we think the plaintiff was entitled to have the jury determine whether under the circumstances, and at the time and place described, the defendant failed to exercise the degree of care incumbent upon one who operates a motor vehicle upon a public street, and whether such failure was the proximate cause of the injury complained of.

A generally recognized principle of human conduct, in relation to those to whom the duty of reasonable care to avoid injury is owed, requires that the one charged with such duty should exercise that degree of care and forethought which is commensurate with the dangers reasonably to be anticipated. *Calhoun v. Light Co.*, 216 N. C., 256, 4 S. E. (2d), 858. In accord with this principle, when one drives an automobile on a public street and sees, or by the exercise of due care should see, small children on or near the traveled portion of the street and apparently intending to cross, it is his duty to use proper care with respect to the speed and control of his automobile, the giving of timely warning

and the maintenance of vigilant outlook, to avoid injury, recognizing the likelihood of their running into or across the street in obedience to childish impulses. *Moore v. Powell,* 205 N. C., 636, 172 S. E., 327; *Fox v. Barlow,* 206 N. C., 66, 173 S. E., 43; *Smith v. Miller,* 209 N. C., 170, 183 S. E., 370; 5 Am. Jur., 613; 67 A. L. R., 317 (note). The destructive result of the collision would tend to indicate excessive speed. *Powers v. Sternberg,* 213 N. C., 41, 195 S. E., 88. It was said in *S. v. Gray,* 180 N. C., 697 (710), 104 S. E., 647: "He must increase his exertion in order to avoid danger to children whom he may see, or by the exercise of reasonable care should see, on or near the highway." Under such circumstances due care should be proportioned to the child's incapacity adequately to protect himself. 38 Am. Jur., 685.

We think the evidence here adds up to something more than what was held insufficient as merely speculative and conjectural under the facts in *Mitchell v. Melts,* 220 N. C., 793, 18 S. E. (2d), 406; *Pack v. Auman,* 220 N. C., 704, 18 S. E. (2d), 247; and *Mills v. Moore,* 219 N. C., 25, 12 S. E. (2d), 661. See also *Bass v. Hocutt,* 221 N. C., 218, 19 S. E. (2d), 871.

As this case goes back for trial, we refrain from further discussion of the evidence. It will be understood, however, that in holding plaintiff's evidence sufficient to carry the case to the jury we express no opinion as to its weight. The defendant's evidence may throw a different light on the unfortunate occurrence.

The judgment of nonsuit is

Reversed.