GRADY ENNIS, ADMINISTRATOR OF THE ESTATE OF CECIL MAC ENNIS, DECEASED v. TALLIE DUPREE AND WIFE, SARAH DUPREE.

(Filed 12 June 1964.)

1. **Automobiles § 41m—Evidence held insufficient to show that motorist could have seen cyclist in time to have avoided collision.**

    Evidence tending to show that plaintiff was traveling at a lawful speed in a northerly direction along a paved highway and that plaintiff's intestate, an eight year old boy, rode his bicycle down a path or a dirt road from the east out into the highway and was struck by defendant's car, with evidence that there was a scooped-out place on the highway some 18 inches to the west of its center line, indicating the place of impact, with further evidence that the path or dirt road entered the highway down a steep grade, with an enbankment obstructing the view of the child until he was within some 20 feet of the hardsurface, *is held* insufficient to be submitted to the jury on the issue of the driver's negligence.

2. **Automobiles § 32—**

    A driver is not an insurer of the safety of children along the highway, and, when nothing puts or should put him on notice of their presence, he may not be held liable for hitting a child who runs or rides a bicycle into his lane of travel from behind an obstruction under circumstances in which the motorist, in the exercise of due care and a proper lookout, could not have seen the child in time to have avoided collision.

3. **Appeal and Error § 60—**

    Decision on former appeal overruling nonsuit is not conclusive upon a subsequent trial when the evidence upon the subsequent trial is materially

different from that of the first so as to attract the application of a different principle of law.

APPEAL by plaintiff from *Parker (Joseph W.), J.,* September 1963 Civil Session of HARNETT.

Civil action to recover damages for the death of an eight-year-old boy in a bicycle-automobile collision, allegedly caused by the *feme* defendant's negligent operation of a 1958 Plymouth station wagon owned by and registered in the name of her husband, the male defendant.

From a judgment of compulsory nonsuit at the close of plaintiff's evidence, he appeals.

*Taylor & Morgan and Everette L. Doffermyre by Everette L. Doffermyre for plaintiff appellant.*

*Franklin T. Dupree and Franklin T. Dupree, Jr., for defendant appellees.*

PARKER, J. This is the second appeal in this case. In the first trial of this case in the superior court of Harnett County at the 4 June 1962 Civil Term, judgment of compulsory nonsuit was entered at the close of plaintiff's evidence. Plaintiff's appeal was heard at our Fall Term 1962, and a majority of the Court were of the opinion that plaintiff's evidence made out a *prima facie* case of actionable negligence on the part of the defendants, and that a judgment of compulsory nonsuit on the ground that plaintiff's intestate, an eight-year-old boy, was guilty of legal contributory negligence was not permissible, because of the rebuttable presumption that the eight-year-old boy was incapable of contributory negligence. We reversed the judgment of nonsuit. *Ennis v. Dupree,* 258 N.C. 141, 128 S.E. 2d 231.

This is said in *Johnson v. R. R.,* 257 N.C. 712, 127 S.E. 2d 521:

"When it has been determined on appeal that the evidence warrants the submission of the case to the jury, such determination of the Supreme Court is the law of the case and, in a subsequent hearing upon substantially the same evidence, the refusal of the trial court to submit the case to the jury is error. [Citing authority.] But where the evidence on the subsequent trial is materially different from that on the former trial, the decision of the Supreme Court on the former appeal as to the sufficiency of the evidence is not conclusive. [Citing authority.]"

The question for decision on the instant appeal is whether upon the retrial of this case plaintiff's evidence, considered in the light most

favorable to him, is materially different from that in the former trial so as to warrant the judgment of compulsory nonsuit.

The majority opinion on the former appeal contains a brief summary of the pleadings of the parties and a summary of plaintiff's evidence at the first trial. For an understanding of the general facts and circumstances of the case, reference should be had to our former majority opinion. The pleadings in the retrial are not materially different from those in the first trial. We summarize here only such of the evidence introduced at the two trials as is necessary to a decision of the instant appeal.

Plaintiff's evidence in both trials shows the following facts:

About 3:40 p.m. on 16 February 1959 Mrs. Sarah Dupree, a school teacher, was driving a 1958 Plymouth station wagon on her right side of the road in a northerly direction on State Highway #55. This station wagon was registered in the name of her husband, the male defendant. Mrs. Hilda Rose Lee, Frances Hockaday and Sheila Dupree, a daughter of defendants, were riding in the station wagon as passengers.

State Highway #55, which has pavement 24 feet wide and dirt shoulders several feet wide on each side of the pavement, is straight for several hundred feet south of the place where the collision on the highway occurred. At or near the scene of the collision two dirt roads, one from the east and one from the west, intersect the highway. The road intersecting the highway from the east is slightly south of the road that intersects the highway from the west. The dirt road that intersects the highway from the east is about 12 feet wide and goes down into the highway at a fairly steep angle. There are no signs on the highway indicating this road. At the southeast side of this little road entering the highway from the east is an embankment over six feet high according to plaintiff's witness William Ragsdale, and over ten feet high according to the male defendant, who was examined as an adverse witness by plaintiff. According to measurements made by State Highway Patrolman Stuart Moore, the distance from the pavement to this embankment on the east side of the highway at or near the scene of the collision is 20 feet; it is 32 feet from the center of the highway to this embankment.

At or near the scene of the collision *feme* defendant was traveling on the highway at a speed of 40 to 45 miles an hour. It was open country, and the speed limit was 55 miles an hour. No other motor cars were near. *Feme* defendant was looking straight ahead. Suddenly a child on a bicycle appeared in front of her on the highway and in a

second she hit the child. Her station wagon swerved to the left on the highway, went down on its west side about 120 feet, and turned over in a ditch on the left side of the highway. When her automobile came to rest, the bicycle was on the west side of the highway, and the dead body of plaintiff's intestate, a boy who was eight years, eleven months old, lacking three days, was lying in the ditch beside the station wagon. Plaintiff's intestate was riding a 26″ bicycle. On the west side of the highway in the direction plaintiff was traveling, about 18 inches from the center line, there was a scooped-out place across from the right-hand ditch of the dirt road coming into the highway from the east.

On the first trial plaintiff's evidence did not disclose the direction in which the plaintiff's intestate was riding his bicycle, or where he was a short time before he was struck by the station wagon and killed.

At the retrial of this case plaintiff called as a witness one Joanne Tripp, who was not a witness at the first trial. She testified in substance, except when quoted: For one going north on Highway #55 she lives on the little dirt road entering the highway from the east. Her home is 400 or 500 feet up this little dirt road from where it goes into the highway. The little dirt road goes up "a right good hill" from the highway to her home. "Where my house is the little path is almost level, but on the west side of my house it starts down a slope toward 55, and when it gets within 50 to 60 feet from 55 it drops off sharply down a steep hill as it goes into the highway." Plaintiff's intestate, Cecil Mac Ennis, lived with his parents on the opposite side of the highway from her home. On the afternoon little Cecil Mac Ennis was killed, she, a junior in high school and now 22 years old, got off a school bus and began walking up this little dirt road to her home. When she was about 55 feet from her home, Cecil Ennis riding a bicycle came up the little dirt road to where she was. "I saw the bicycle, that is the same bicycle that little Mac Ennis was riding. It is about 26 inches. It is a small bicycle." He wanted to know if his mother could borrow a wheelbarrow. She told him yes, and he said, "I will take my bicycle back home." He then turned around and started back down the hill. She testified on direct examination: "After he started back down the hill I heard a noise, but I didn't pay any attention to it then. I heard his mother scream and I threw my books down and ran down to the bottom of the hill." She testified on cross-examination: "I watched the child as he started toward his home on the bicycle. I watched him peddle down the hill until he went out of sight. He started peddling down the hill and when he got enough speed he took his feet off the pedals and stuck his feet out on each side of the bicycle. He was riding that way when he went out of sight. He was about 60 feet from the highway when he went out of sight and in a matter of no more

than a few seconds I heard the crash and then his mother scream. I ran down to the scene."

The majority opinion in the former appeal states, "This is a border line case." There was in the former appeal a total absence of evidence as to the direction in which Cecil Ennis was riding his bicycle, or where he was a short time before he was struck. The evidence in the former trial, and also in the retrial, is that there was a scooped-out place in the highway about 18 inches west of its center line in the direction the *feme* defendant was traveling. The majority opinion in the former appeal states that this "permits the reasonable inference that the child on his bicycle was struck at that point." A majority of the Court on the former appeal were of opinion that the testimony of *feme* defendant in the first trial, who was examined by plaintiff as an adverse witness, and the total absence of evidence in the first trial as to the direction in which Cecil Ennis was riding his bicycle, or where he was a short time before he was struck, would permit a jury to find that Cecil Ennis was riding his bicycle on the highway at a time when she was an appreciable distance away from him, and that her failure to see him until just an instant before the collision was attributable to her failure to keep a proper lookout, and, therefore, the judgment of nonsuit was reversed.

Joanne Tripp was not a witness in the first trial. She was called as a witness by plaintiff in the retrial, and her testimony in the retrial makes the plaintiff's evidence in the retrial materially different from that in the first trial. Her evidence in the retrial is to the effect that she lives 400 or 500 feet from Highway #55 on the little dirt road or path that enters the highway from the east. Where her home is the little path is almost level, and when it gets within 50 to 60 feet from the highway it drops off sharply down a steep hill as it goes into the highway. That from a distance of about 55 feet from her home Cecil Ennis, whose parents lived across the highway from her, started riding his bicycle down this little dirt road or path to the highway. He started peddling down the hill, and when he got up enough speed he stuck his feet out on each side of the bicycle. He was riding that way when he got out of her sight about 60 feet from the highway, at which point the little dirt road or path drops off sharply down a steep hill as it goes into the highway. A few seconds after Cecil Ennis went out of her sight, she heard a crash and his mother scream.

Cecil Ennis entered the highway from the east. To his left was an embankment over six feet high according to the witness William Ragsdale, and over ten feet high according to the male defendant, who was examined by plaintiff as an adverse witness. There is no evidence as to

the speed of the bicycle, though there is evidence that Cecil Ennis got up speed and coasted down a steep hill into the highway. From the embankment to the center of the highway is 32 feet. The scooped-out place in the highway was about 18 inches west of the center line of the highway. When Cecil Ennis on his bicycle came from behind the embankment headed into the highway, he was about 33-½ feet from this scooped-out place in the highway, where it seems the collision occurred. If Cecil Ennis was traveling 20 miles an hour when he entered the highway, he was going 29 feet a second; if he was traveling 15 miles an hour, he was going 22 feet a second.

The *feme* defendant was traveling in the afternoon on a straight road at a speed of 40 to 45 miles an hour, in a 55-mile speed zone. She was looking straight ahead. There is nothing in the evidence to indicate that the *feme* defendant in the exercise of ordinary care should have reasonably foreseen that a child on a bicycle would come riding down the little dirt road to her right from behind the embankment so suddenly in front of her that in a matter of seconds a collision would occur. Plaintiff's evidence in the retrial, which is materially different from that in the first trial, shows, when considered in the light most favorable to him, that Cecil Ennis rode his bicycle into the highway so suddenly and so close in front of *feme* defendant's station wagon that she had no opportunity to stop it and avoid striking him. According to a "Driver's Refresher Handbook of Traffic Laws and Highway Safety," published by the N. C. Department of Motor Vehicles, 1962, a car with good brakes traveling at a speed of 40 miles an hour can be brought to a stop 105 feet from the point at which the brakes actually take hold.

This Court said in *Dixon v. Lilly*, 257 N.C. 228, 125 S.E. 2d 426, quoting from Blashfield, Cyclopedia of Automobile Law and Practice, Per. Ed., Vol. 2A, § 1498:

> " 'Drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. Accordingly, a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not reasonably be foreseen. He is not required to anticipate the appearance of children in his pathway, under ordinary circumstances, from behind parked automobiles or other obstructions.

> " 'Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the

road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him'."

The death of little Cecil Mac Ennis was a tragic accident. However, considering the materially different evidence in the retrial, represented by the testimony of Joanne Tripp, in the light most favorable to plaintiff, it fails to establish actionable negligence on the part of defendants. By reason of the fact that the evidence in the retrial is materially different from that in the first trial, our decision on the former appeal as to the sufficiency of the evidence in the first appeal is not conclusive.

Our decision in the instant case finds support in our following cases: *Dixon v. Lilly, supra; Johns v. Day,* 257 N.C. 751, 127 S.E. 2d 543; *Brewer v. Green,* 254 N.C. 615, 119 S.E. 2d 610; *Brinson v. Mabry,* 251 N.C. 435, 111 S.E. 2d 540; *Knott v. Transit Co.,* 231 N.C. 715, 58 S.E. 2d 696; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661; *Fox v. Barlow,* 206 N.C. 66, 173 S.E. 43; *Kennedy v. Lookadoo,* 203 N.C. 650, 166 S.E. 752.

The judgment of compulsory nonsuit is
Affirmed.