TIMOTHY SHELDON WINTERS BY HIS GUARDIAN AD LITEM L. G. GORDON, JR., AND HARRY C. WINTERS v. PATRICIA PATTERSON BURCH

No. 7

(Filed 14 November 1973)

1. Automobiles § 63— children on or near highway — duty of motorist
     The presence of children on or near a highway is a warning signal to a motorist who must bear in mind that they have less capacity to shun danger than adults and are prone to act on impulse; therefore, the presence of children on or near the traveled portion of a highway whom a driver sees, or should see, places him under the duty to use due care to control the speed and movement of his vehicle and to keep a vigilant lookout to avoid injury.

2. Automobiles § 63— striking of child — presumption of negligence
     No presumption of negligence arises from the mere fact that a motorist strikes and injures a child who darts into the street or highway in the path of his approaching vehicle.

3. Automobiles § 63— striking child on tricycle — insufficient evidence of negligence — directed verdict proper
     In an action to recover for personal injuries sustained by minor plaintiff in a collision between his tricycle and defendant's automobile, the trial court properly granted defendant's motion for a directed verdict where the evidence did not provide the answer to the question as to whether defendant, in the exercise of due care, could have seen the minor plaintiff on his tricycle in sufficient time to anticipate his collision course and to take effective measures to avoid it.

PLAINTIFFS appeal under G.S. 7A-30(2) from the decision of the Court of Appeals affirming the judgment of *Gambill, J.,* 3 August 1972 Session of FORSYTH Superior Court.

In these two actions for damages, the minor plaintiff, Timothy Sheldon Winters (Timmy), seeks to recover for personal injuries sustained in a collision between his Big Wheelie tricycle and a 1962 Pontiac automobile being operated by defendant. Plaintiff Harry C. Winters (Winters), the father of Timmy, seeks to recover his son's medical expenses and damages for the loss of his son's services.

At the trial defendant offered no evidence. The evidence for the plaintiffs tended to show:

Pleasant Street runs north and south in the Waughtown area of Winston-Salem. At approximately 4:22 p.m. on 27 April 1971, a bright sunny day, defendant was driving her automobile south on Pleasant, approaching its intersection with Bretton Street. A short distance north of the intersection she collided with 7-year-old Timmy, who was riding his Big Wheelie. At that time defendant was en route to her work at Western Electric Company, about 2½ miles away, where she was due at 4:30 p.m.

Bretton Street enters Pleasant from the west to form a T intersection. North of Bretton, Pleasant is straight and approximately level for about 176 yards. This area is 75 percent residential, and on both sides of the streets are trees, shrubs, and fences. There are no sidewalks in the area; only the curb separates the yards from Pleasant Street.

Plaintiffs' home is located on the southwest corner of Bretton and Pleasant. On the east side of Pleasant directly across from the intersection and plaintiffs' house, is a parking lot which has a frontage of about 300 feet and an elevation of about four feet above street level. There are two entrances into this lot, the south entrance across from Bretton Street and the north entrance a few feet below the corner of a fence on the east side of the street. The investigating officer, R. C. Lambert, testified that the location of these entrances "wasn't pertinent."

In the northwest corner of the intersection of Bretton and Pleasant, directly across Bretton from the home of plaintiffs, is the home of Mrs. Millie Holt. In the front yard are two large trees. According to Winters' measurements, the Holt lot extends from Bretton 150 feet north on Pleasant to a 12-foot wide driveway along the northern property line, a total frontage of 162

Winters v. Burch

feet. Lambert testified that he had "no idea" how far that driveway is from the northern edge of Bretton. However, when shown a small snapshot of Pleasant Street he said that "looking at the picture," in his opinion, the driveway would be approximately 20-30 feet north of Bretton. At the time of the collision between Timmy's Big Wheelie and defendant's automobile, Mrs. Holt's car was parked in this driveway. There were no cars parked on either side of Pleasant Street itself near the scene of the accident.

Adjoining the Holt property on the north is the Fine lot, on which a four-foot high chain fence runs east and west, parallel with the Holt drive and fifteen feet north of it. Across the front of the Fine lot this fence parallels Pleasant Street 6-8 feet from the curb. This section of the fence is broken by the entrance of a driveway into the lot. The record does not disclose the width of this drive or its distance from any fixed point. From the north curb of Bretton Street to the southeast corner of the Fine fence is 177 feet. In the corner of this fence, next to the Holt drive, is a large bush. There is also a large tree in the Fine yard.

When Lambert arrived at the scene about 4:30 p.m. Timmy was being placed in the ambulance. Lambert found defendant's car near the east curb of Pleasant, "a short distance back from the extended curb line of Bretton Street," if it were extended eastward. Mrs. Holt testified that "the car stopped at approximately right at the fire hydrant" on the east side of the street. Lambert testified he thought the hydrant was 2-3 feet north of Bretton Street, but "the fire hydrant had no bearing on the accident." The rear wheels of the Big Wheelie were wedged between the right front wheel and the bumper. The right front tire of the Pontiac was slick except for three tread impressions in the center. The other three tires were in good condition.

Pleasant Street is 26 feet wide. Looking for debris to determine the point of impact, Lambert found a small amount of mud 18 feet north of the curb line of Bretton Street extended, 10 feet east of the west curb of Pleasant, and three feet west of the center line. He concluded that this mud marked the point of impact. He testified that "there were approximately 20 feet of skid marks from her left rear tire and roughly 3-4 feet from the right rear tire." These marks "came out at an angle . . . going toward the east curb. . . . " These marks were north of the mud, there being no marks between the mud and the

resting place of the automobile. On his accident report Lambert noted that the "distance traveled after impact was approximately 21 feet . . . about two-car lengths. . . . "

Defendant told Lambert that she was turning to the east side (her left) of the road when she applied her brakes. The skid marks he saw "were in a swerved direction to her left." She also told Lambert that as she approached Bretton Street she was traveling between 15-20 MPH; "that she saw the boy on the trike bike, slowed down and he started out into the street from her right and she applied the brake and he kept on coming out and they collided."

Officer Lambert found no eyewitnesses to the accident. Timmy sustained a severe head injury in the collision. He testified that he remembered nothing about the accident.

Winters also made an investigation of the accident scene. Pertinent portions of his testimony follow:

"First there was a little bit of mud, a tiny bit of this black plastic from the wheel. . . . It was about 8 feet from the curb, exactly 8 feet as a matter of fact. . . . I saw skid marks at the scene. . . . I measured them. From the start of the tread marks between the two driveways to the car, it's the front of the car that was 54 feet. Yes, sir, the northernmost tread mark to the front of her car was 54 feet. That includes, of course, allowance for the curvature of the roadway. They begin where I found the plastic. I measured 54 feet from the front of the car to the beginning of the skid marks. . . . From the curb line of Bretton Street, that is, the north curb, northward to the edge of the [Fine] fence is 177 feet. . . . Mrs. Holt's frontage is 150 feet . . . north on Bretton Street to her driveway. . . . The fence in the Fine yard is a chain link fence standing 4 feet high and it's freely covered with some ivy. . . . There are two driveways over on the eastern side of the street . . . and three on the western side of the street. It is 150 feet from the Bretton Street curb going north to the first driveway which is 12 feet wide. . . . I counted 54 feet of distance from this mark to where the front of the car was."

At the hospital defendant told Mrs. Margaret Doss, Timmy's aunt, that she saw the boy but didn't think he was going to come out in front of her. Defendant told Timmy's mother that she saw him and "that's just where [she] stopped." Tim-

my's mother testified that it was his custom to play in the parking lot in the afternoon after school; that the last time she had seen Timmy before the accident he and his friend, Joey, were in the parking lot; and that immediately after the accident he was lying in the street close to the right front fender of the car. Neither Mrs. Holt, Mr. and Mrs. Winters, nor Mrs. Doss heard any horn blow prior to the collision. Mrs. Holt and Mrs. Winters heard the squeal of tires and the thud at approximately the same time. Officer Lambert didn't remember asking defendant whether she blew her horn prior to the collision or whether she told him one way or the other.

At the close of plaintiffs' evidence Judge Gambill allowed defendant's motion for a directed verdict and dismissed plaintiffs' actions. The Court of Appeals affirmed. *Winters v. Burch,* 17 N.C. App. 660, 195 S.E. 2d 343 (1973). One member of the panel having dissented, defendant appealed as a matter of right.

*Hatfield and Allman by James W. Armentrout and R. Bradford Leggett, Jr., for plaintiff appellants.*

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter for defendant appellee.*

SHARP, Justice.

[1] Defendant's motion for a directed verdict at the close of plaintiffs' evidence presents the question whether the evidence, considered in the light most favorable to plaintiffs, is sufficient to justify a verdict in their favor. *Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973); *Younts v. Insurance Co.,* 281 N.C. 582, 189 S.E. 2d 137 (1972); *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971). It has long been the rule in this State that the presence of children on or near a highway is a warning signal to a motorist, who must bear in mind that they have less capacity to shun danger than adults and are prone to act on impulse. Therefore, "the presence of children on or near the traveled portion of a highway whom a driver sees, or should see, places him under the duty to use due care to control the speed and movement of his vehicle and to keep a vigilant lookout to avoid injury." *Brinson v. Mabry,* 251 N.C. 435, 438, 111 S.E. 2d 540, 543 (1959). *See Hamilton v. McCash,* 257 N.C. 611, 127 S.E. 2d 214 (1962); *Pope v. Patterson,* 243 N.C. 425, 90 S.E. 2d 706 (1956); *Greene v. Board of Education,* 237 N.C. 336, 340, 75 S.E. 2d 129, 131 (1953).

[2]   However, no presumption of negligence arises from the mere fact that a motorist strikes and injures a child who darts into the street or highway in the path of his approaching vehicle. *Brewer v. Green,* 254 N.C. 615, 119 S.E. 2d 610 (1961). The rule established by our decisions is well stated in 4 Blashfield, Automobile Law and Practice (3d Ed. 1965) § 151.11 as follows:

"A motorist is not, however, an insurer of the safety of children in the street or highway; nor is he bound to anticipate the sudden appearance of children in his pathway under ordinary circumstances. Accordingly, the mere occurrence of a collision between a motor vehicle and a minor on the street does not of itself establish the driver's negligence; and some evidence justifying men of ordinary reason and fairness in saying that the driver could have avoided the accident in the exercise of reasonable care must be shown. In the absence of such a situation, until an automobile driver has notice of presence or likelihood of children near line of travel, the rule as to the degree of care to be exercised as to children is the same as it is with respect to adults." *See Badger v. Medley,* 262 N.C. 742, 138 S.E. 2d 401 (1964); *Ennis v. Dupree,* 262 N.C. 224, 136 S.E. 2d 702 (1964); *Dixon v. Lilly,* 257 N.C. 228, 125 S.E. 2d 426 (1962); *Brewer v. Green, supra; Brinson v. Mabry, supra; Fox v. Barlow,* 206 N.C. 66, 173 S.E. 43 (1934); 4 Blashfield, *supra,* §§ 151.13, 151.23.

[3]   Applying the foregoing principles to the evidence in this case, we hold that it fails to establish actionable negligence on the part of defendant. Her motion for a directed verdict, therefore, was properly allowed. There is no evidence tending to show that defendant was traveling at an excessive rate of speed. Taking as true Winters' testimony that there were 54 feet of skid marks, yet plaintiffs have offered no evidence that such marks indicate speeding. We note that in a residential district the maximum speed limit is 35 MPH. G.S. 20-141 (b) (2). Further the skid marks support no inference that the slick tire affected defendant's ability to stop.

At this point we note that Winters did not identify the two driveways between which he said he found the plastic, the point where he said the skid marks began. It seems unlikely that he would have referred to Bretton Street as a driveway and, as Lambert suggested, the two driveways into the parking lot were not pertinent.

From Bretton Street north, Pleasant is straight for 176 yards. As defendant traveled south, however, her view to the right beyond the curb was necessarily obstructed at various points by trees, bushes, and fences, the exact location of most of which cannot be determined from the record. It is also possible that the Holt automobile parked in the drive was a partial obstruction.

While all the evidence tends to show that Timmy entered the street from defendant's right (west side), there is no evidence tending to show where he was when, in the exercise of proper care, she could or should have seen him, or at what point he rode into the street. Did the boy ride over the curb from the Holt yard into the street in front of defendant's approaching automobile? If so, from where did he come? Did he come out of a drive and, if so, which drive? Was he in the street, traveling in the same direction as defendant and suddenly turned to his left?

The evidence adduced at the trial does not provide the answer to the crucial question in the case, that is, whether defendant, in the exercise of due care, could have seen the boy in sufficient time to anticipate his collision course and to have taken effective measures to avoid it. Left to speculation is the time when defendant should have first seen Timmy as well as the place and manner of his entrance into the street. Negligence is not presumed from the mere fact that defendant's automobile struck and injured the boy. Plaintiffs have the burden of establishing that her negligence was the proximate cause of the boy's injury. In our view "the probabilities arising from a fair consideration of the evidence . . . afford no reasonable certainty on which to ground a verdict." *Mills v. Moore,* 219 N.C. 25, 31, 12 S.E. 2d 661, 665 (1941).

The decision of the Court of Appeals is

Affirmed.