SEBASTIAN LEE COLSON, BY HIS GUARDIAN AD LITEM, CLARENCE V. MATTOCKS, AND PATRICIA ANN COLSON v. MAMIE MACON SHAW AND DAN R. DOUGLASS

No. 7818SC631

(Filed 6 May 1980)

1. **Automobiles § 63.1— child darting into road—insufficient evidence of negligence**

In an action to recover for injuries sustained by a child who was struck by a car driven by one defendant, the trial court properly allowed defendant's mo-

Colson v. Shaw

tion for directed verdict where the evidence tended to show that the pavement at the scene of the accident was wet; numerous people were standing around; cars were parked on both sides of the street; it was dark when the accident occurred; there was no evidence that defendant in any way failed to drive in a careful and prudent manner; she was not speeding; her headlights were burning; she was looking straight ahead as she drove beside the car from behind which the child suddenly ran into her path; and although defendant was unable to apply her brakes before the collision occurred, she brought her car to a stop immediately after the accident, confirming that she was driving slowly, maintaining a proper lookout, and keeping her vehicle under proper control.

2. **Automobiles § 92.4— minor passenger—duty of driver—no duty to supervise crossing of street**

In an action to recover for injuries sustained by a child who alighted from one defendant's car and ran into the path of the other defendant's car, the defendant in whose car the child had been a passenger was under a duty to let the child out at a safe place and not to stop his car in such a way as to create a hazard, but defendant driver was not under a duty to supervise the child in crossing the street, since defendant was strictly a volunteer in offering the child a ride, and two other adults besides defendant were in the car, one of whom had accepted primary responsibility for the safety of the child.

Judge MARTIN (Harry C.) dissenting.

APPEAL by plaintiffs from *Crissman, Judge.* Judgment entered 5 April 1978 in Superior Court, GUILFORD County. Heard in the Court of Appeals 29 March 1979.

On 18 June 1976 the minor plaintiff, Sebastian Lee Colson, then five years old, was severely injured when he was struck by an automobile driven by the defendant, Mamie Macon Shaw, as he was attempting to cross a city street after getting out of an automobile driven by the defendant, Dan R. Douglass. This action was brought to recover damages for his injuries and for medical expenses incurred for his treatment by his mother, the plaintiff Patricia Ann Colson. The plaintiffs alleged that the child's injuries were caused by the joint and concurrent negligence of the defendants. The defendants denied they were negligent.

At trial before a jury, the plaintiffs presented evidence to show the following: On 18 June 1978, Patricia Ann Colson, together with three of her children, Sebastian, Effrim, and Verlanda, were visiting at the home of Patricia's mother, Ola Mae Campbell, on East Commerce Avenue in High Point. East Commerce Avenue runs east and west and a short distance east of the Campbell residence is intersected by Meredith Street, which runs

north and south. East Commerce Street is 32 feet wide and is paved with a coarse blacktop surface. The Campbell residence was located on the north side of East Commerce Avenue, the front porch of the house being 78 feet westward from the west margin of Meredith Street. There was at least one house between the Campbell house and Meredith Street. There was a street light on a pole located on the north side of East Commerce Avenue 70 feet west from the Campbell house.

About seven or eight o'clock in the evening, Fanny Douglass, the mother of the defendant, Dan Douglass, came to the Campbell house with two of her grandchildren, Kevin and Renee, the children of Dan Douglass. These children were approximately the same age as the Colson children, and the children played together every day. Verlanda Colson was then seven years old, Effrim was six, and Sebastian was five. Fanny Douglass asked Patricia Colson if her daughter, Verlanda Colson, could go with Mrs. Douglass and her two grandchildren down the street to a friend's house. Patricia said that she could. The two little Colson boys, Effrim and Sebastian, started crying that they also wanted to go, because Fanny Douglass had her little grandson with her. Patricia Colson told her boys that Mrs. Douglass had not asked for them to go. Mrs. Douglass then said, "Well Pat, let them go. Let all of them go. I got my two grandkids with me. I wouldn't let nothing happen to them." Patricia Colson then allowed her children to go with Fanny Douglass.

Later that evening, about 9:00 o'clock when it had become "dusk dark," Dan Douglass, while driving his two-door Chevrolet automobile eastward on East Commerce Avenue, saw his mother, Fanny Douglass, with his own children and the Colson children, walking eastward along the south side of the Avenue toward Meredith Street. They were accompanied by Eli Lindsey, an adult friend of Mrs. Douglass's. Dan Douglass stopped and offered them a ride. They accepted, Kevin Douglass and Sebastian Colson getting into the front seat, and Mrs. Douglass, Eli Lindsey, and the remaining children getting into the back. Sebastian Colson was seated in the front seat next to the front door, and Kevin Douglass, who was about the same age as Sebastian, was seated just to his left. After all were in the car, Dan Douglass learned from his mother that the Colson children were to be taken back to their grandmother Campbell's house, just a little less than a

block away. He drove forward on East Commerce Avenue, proceeding eastwardly toward the Meredith Street intersection. He stopped his car on the right hand, or south, side of East Commerce Avenue directly across the street from the Campbell house and in front of another car, which was already parked on the same side of the street. There was no car parked on the south side of East Commerce Avenue between the Douglass car and Meredith Street. There were cars parked along the north edge of East Commerce Avenue, but none was parked directly in front of the Campbell house. There were a lot of people standing in the front yard of the house on the corner next to the Campbell house, and a few people were standing in front of the Campbell house.

Sebastian Colson got out of the car first, followed by the other passengers, except for Kevin Douglass, who remained in the car with his father. After getting out of the car, Sebastian went around to the back of the Douglass car and then started to run across East Commerce Avenue toward his grandmother Campbell's house. As he did so he ran into or was hit by the car driven by the defendant, Mamie Macon Shaw. Just prior to the accident, defendant Shaw had driven her car around the corner from Meredith Street and was driving westward on East Commerce Avenue when the collision occurred. As a result of the collision, Sebastian was severely injured.

Sebastian's mother, the plaintiff Patricia Ann Colson, was standing on the porch of the Campbell house and saw her son get hit. She testified:

"[W]hen I first came out on the porch . . . I saw Sebastian, running around from the back of Dan Douglass's car. As to what happened as he ran, well, he was running from around the back of the car. At first when I saw him, he had got out of the car on the passenger side of Dan's car, and he was coming from around the car. And I heard somebody scream—Red Kelly scream, 'Babe, don't run out in the street.' And all of a sudden he was already out in the street; and he had gotten hit.

. . . When I first saw Sebastian getting out of the passenger side of Dan Douglass's car, I did not see any other person in the area of Dan Douglass's car outside the car. I did see my other children at some time. When I saw my

other children, that would be Verland (sic) and Effrim. When I saw them, they were already out of the car and was waiting at the front of Dan's car to cross the street; but they didn't cross the street until after the accident. I didn't at any time while I saw Sebastian moving from the passenger side and crossing the street in the path of the Shaw car see either Fanny Douglass or Eli Lindsey get out of the Douglass car. There was no other person during any of that time standing outside of the car."

Dan Douglass testified:

"When I stopped there at the Campbell house, I did not at any time get out of my car before Sebastian Colson did. I did not at any time make any effort to determine for Sebastian Colson whether or not there was any traffic coming up or down the street, I just pulled up beside the curb. My mother didn't suggest to me that it would be better for me to pull over to the other side of the street and let the kids out in front of the Campbell house. I am denying that.

Before Sebastian got out of the car, I made no attempt to see what traffic was coming. I didn't tell Sebastian to be careful. I did pay some attention to who got out of the car first. Sebastian got out first. As to who opened the door for him, if I'm not mistaken, he opened it himself. He or my son, one opened the door.

\*     \*     \*

When Sebastian got out of my car, there wasn't anybody holding his hand. And I didn't get out of my car to help him across the street."

At the conclusion of plaintiffs' evidence, both defendants moved for directed verdicts on the grounds that plaintiffs' evidence, taken in the light most favorable to the plaintiffs, failed to establish any negligence on the part of either defendant. From judgment granting the motions of both defendants, plaintiffs appeal.

*Schoch, Schoch and Schoch, by Arch Schoch, Jr., attorneys for plaintiffs appellants.*

*Brinkley, Walser, McGirt, Miller & Smith by Charles H. McGirt and D. Clark Smith, Jr., attorneys for defendant appellee, Mamie Macon Shaw.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr., attorneys for defendant appellee Dan R. Douglass.*

PARKER, Judge.

Defendants' motions for directed verdict present the question whether the evidence, considered in the light most favorable to plaintiffs, is sufficient to justify a verdict in their favor as against either defendant. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). We shall so consider the evidence as it relates to the plaintiffs' claims of negligence against each defendant separately.

EVIDENCE AS TO NEGLIGENCE ON THE PART

OF THE DEFENDANT MAMIE MACON SHAW

[1]   Plaintiffs alleged that defendant Shaw was negligent in failing to keep a proper lookout, in failing to maintain her vehicle under proper control, in driving at a speed greater than was prudent under existing circumstances, and in failing to reduce speed when special conditions of hazard existed, to wit: a wet pavement, cars parked on both sides of a narrow street in a heavily populated area, and numerous people standing around the immediate area of impact. The evidence does not support any of these allegations of negligence. While there was evidence to show that the pavement was wet, that the area was heavily populated, that numerous people were standing around, that cars were parked on both sides of the street, and that it was dark when the accident occurred, there was no evidence that defendant Shaw in any way failed to drive in a careful and prudent manner in the face of these conditions of special hazard. On the contrary, the uncontradicted evidence shows that she was not speeding, that her car was "going very slow as it turned and came down into Commerce Street," that its headlights were burning, and that she was looking straight ahead as she drove beside the Douglass car from behind which the child suddenly ran into her path. Although she

testified that she was unable to apply her brakes before the collision occurred, the evidence shows that she brought her car to a stop immediately after the accident, confirming that she was driving slowly, maintaining a proper lookout, and keeping her vehicle under proper control.

"[N]o presumption of negligence arises from the mere fact that a motorist strikes and injures a child who darts into the street or highway in the path of his approaching vehicle." *Winters v. Burch*, 284 N.C. 205, 210, 200 S.E. 2d 55, 58 (1973). To justify a verdict finding the driver actionably negligent in such a case, there must be some evidence that he could have avoided the accident by the exercise of reasonable care under the circumstances. *Daniels v. Johnson*, 25 N.C. App. 68, 212 S.E. 2d 245 (1975). No such evidence appears in the present case, nor was there any evidence that defendant Shaw failed in any way to exercise reasonable care in the manner in which she operated her vehicle. Her motion for directed verdict was properly allowed.

### EVIDENCE AS TO NEGLIGENCE ON THE PART
### OF THE DEFENDANT DAN R. DOUGLASS

[2]   Plaintiffs do not allege, nor was there any evidence to show, that defendant Douglass was negligent in the manner in which he operated his vehicle. On the contrary, the evidence shows that after picking up his passengers he drove forward and stopped his car on the right hand side of the street next to the curb at a place where it was lawful for him to stop and where his passengers could get out of his car at a place of safety. Plaintiffs' allegations of negligence on the part of defendant Douglass are that he "failed to supervise the minor plaintiff in unloading and alighting from his car" and that he "failed to supervise the minor plaintiff in crossing the street." There was no evidence that the minor plaintiff was injured while alighting from the Douglass car. On the contrary the evidence shows that he got out of the car safely and at a place of safety on the right hand side and away from the traveled portion of the street. Thus, any failure on the part of defendant Douglass "to supervise the minor plaintiff in unloading and alighting from his car" was not a cause of the minor plaintiff's injuries. There remains the question whether defendant Douglass can be held liable for failing to supervise the minor plaintiff in crossing the street. The real question presented is

whether, under all of the circumstances of this case, he had a duty to do so. In our opinion he did not.

As respects the Colson children, including the minor plaintiff, defendant Douglass was strictly a volunteer in offering them a ride. As such, his only duty with respect to letting the children out of his car at their destination was to let them out at a safe place and not to stop his car in such a way as to create a hazard. This he did. When the minor plaintiff was getting out of the car, there were, in addition to defendant Douglass, two other adults present in the car. One of these, defendant Douglass's mother, had accepted primary responsibility for the safety of the Colson children when she had assured their mother that she "wouldn't let nothing happen to them." Once the Colson children were safely out of his car and at a safe place, defendant Douglass owed them no greater duty to warn them to be careful in crossing the street or to supervise the manner of their crossing than did any other adult who was present at the time, and he did not owe as great a duty in this regard as did his mother who had accepted responsibility for their safety. Under all of the circumstances of this case, we hold that the evidence, considered in the light most favorable to the plaintiffs, fails to disclose the breach by defendant Douglass of any duty owed by him to the minor plaintiff which was a proximate cause of the latter's injuries.

In so holding we do not suggest that a driver who has deposited a passenger at a place of safety may not under any circumstances be held liable for subsequent injuries sustained by that passenger on crossing the street. We hold only that under the circumstances of this case defendant Douglass may not be so held. In this regard each case must be decided on the basis of its own facts, as the cases collected in Annot., 20 A.L.R. 2d 789 (1951) will illustrate. It is on the basis of their facts that the cases cited and relied upon by the plaintiffs are distinguishable from the present case. For example, in *Nelson v. Williams*, 300 Minn. 143, 218 N.W. 2d 471 (1974), the motorist parked his automobile on the shoulder of a dual lane high-speed divided highway and allowed his eight year old son to walk over into the median to retrieve an object which had fallen from a boat which the motorist's automobile was towing. The child was struck by a passing vehicle as he was attempting to recross the highway to return to his father's car. There was evidence that the father could have driven

to a cross-over and from thence to a place where he could have parked on the median near the spot where the object was believed to have fallen. Under these circumstances the Minnesota Supreme Court held that the jury was justified in finding that the father in the use of his automobile failed to exercise that degree of care for the protection of his minor son that should be expected of a reasonably prudent person. In *Riley v. Board of Education, Central Sch. Dist. No. 1*, 15 A.D. 2d 303, 223 N.Y.S. 2d 389 (1962), the motorist, after letting an eight-year-old boy out of her car, undertook to direct him across the road in safety. In so doing, she gave the child a confusing signal which caused him to enter upon the paved portion of the road where he was struck and killed. In affirming judgment for the plaintiff, the court held that "[t]he affirmative act of waving her hand to direct the discharged passenger, under the circumstances, was negligence." 15 A.D. 2d at 305, 223 N.Y.S. 2d at 391. In *Crane v. Banner*, 93 Idaho 69, 455 P 2d 313 (1969) the motorist discharged an eight year old girl on the side of a country road in the dark, knowing she would have to cross the road to reach her home and without dimming his lights. She was struck and killed by a vehicle approaching from the direction in which the lights were shining and whose driver was partially blinded by the bright lights. In reversing a summary judgment for the defendant motorist who had discharged the passenger from his vehicle, the Supreme Court of Idaho held that under the circumstances of that case whether there was a duty and breach of duty by the motorist were issues for resolution by the jury. The court stated that whether the motorist's negligent failure to dim his lights was a proximate cause of the accident was also an issue for the jury's determination.

It will be seen that in each of these cases there was some circumstance in addition to merely letting the child out of the car at a place of initial safety which caused the court to find the presence of a jury issue. In *Nelson* it was the father's action in allowing his young son to cross and recross the dual lanes of a high speed highway when, by a small extra effort on the part of the father, the child could have accomplished his mission without ever entering upon the highway. In *Riley* it was the motorist's affirmative action in negligently giving a confusing signal which caused the child to step in front of approaching traffic. In *Crane* it

was the motorist's failure to dim his bright lights which increased the hazard to the child. No such additional circumstance appears in the present case.

The facts of the present case are very similar to those in *Employers Liability Assur. Corp., Ltd. v. Smith*, 322 S.W. 2d 126 (Ky. Ct. of App. 1959). In that case a country school teacher had volunteered to give some of her small pupils a ride toward their home at the close of school. She let them out on the right side of a narrow, graveled country road, as far off the road as possible, when there was no approaching traffic, and her automobile was not in such a position as to create a hazard. She knew, however, that some of the children lived on the opposite side of the road and that it would be necessary for them to cross the road to reach their home. One of these children, age 5, after getting out of the car, ran from behind it into the road and was struck by a passing truck which had come around a curve after the children had gotten out of the car. In affirming a directed verdict for the teacher, the court found no duty on the teacher either to warn the small children of the danger of the approaching truck or to take precautions to see that they could cross the road in safety. The court held that under the circumstances of that case the teacher's only duty, with respect to letting the children out of the car at their destination, was to let them out at a safe place and not to stop her car in such a way as to create a hazard. We find the reasoning of the court in that case persuasive under the circumstances of the present case, and we hold that directed verdict for defendant Douglass was properly entered.

Affirmed.

Judge ERWIN concurs.

Judge MARTIN (Harry C.) concurs as to Defendant Shaw and dissents as to Defendant Douglass.

Judge MARTIN (Harry C.) dissenting.

I concur in Judge Parker's opinion with respect to the directed verdict in favor of the defendant Mamie Macon Shaw. However, I find there is sufficient evidence to enable plaintiff to overcome the motion for directed verdict by defendant Dan R.

Douglass and must dissent from that portion of the majority's opinion.

The majority holds that Douglass, the driver of the car, had no duty toward plaintiff other than to let him out at a safe place and not to stop his car so as to create a hazard. The majority holds as a matter of law defendant complied with these duties.

I find there is sufficient evidence to require a jury determination of whether defendant complied with the duty to let plaintiff out of the car at a safe place. What is a safe place for a mature adult may not be safe for a five-year-old child. Defendant let plaintiff exit his car unattended in the nighttime on a busy street, when he knew plaintiff had to cross this street to go to the home of his grandmother. Defendant's car was a two-door car and Fanny Douglass, who had charge of plaintiff and the other children before they got into the car, was in the back seat, unable to get out of the car until after plaintiff left it. This prevented her from being able to attend plaintiff as he exited.

Defendant knew that Fanny Douglass from her position in the back seat of the car could not control this five-year-old lad as he got out of the car. He knew the boy was going to cross the street to go to his grandmother's home. Defendant had a duty to recognize the likelihood of plaintiff's running across the street in obedience to childish impulses. *Yokeley v. Kearns*, 223 N.C. 196, 25 S.E. 2d 602 (1943). Under these circumstances, due care by Douglass must be proportionate to the plaintiff's incapacity adequately to protect himself. *Id.* In considering the alternatives available to Douglass in choosing a place to allow plaintiff to exit the car, it is difficult to conceive of a more dangerous place than the one he selected.

Likewise, I find the evidence of Douglass's stopping his car in the dark on the busy street across from plaintiff's destination is sufficient to allow a jury to decide whether defendant created a hazard for this five-year-old boy. Defendant could have easily driven the short distance required to park on the north side of East Commerce Street with the passenger side of the car adjacent to the curb and thereby allowed plaintiff and the other small children to go to the grandmother's house without crossing the street. A jury could reasonably find that when defendant stopped the car on the opposite side of the street, he created the hazard

of requiring this five-year-old child to cross a dangerous street to reach his grandmother's house.

In addition, under the facts of this case, I find defendant also had the duty to supervise or control plaintiff as he left the car, until Fanny Douglass was in position to resume her control over him. To hold defendant had no further duty to such a young child once he got out of the car is to disregard the rule in *Yokeley* that due care by defendant is proportionate to plaintiff's incapacity adequately to protect himself. Because of his tender years, plaintiff could not adequately protect himself from harm when placed in these circumstances.

> A motorist must recognize that children, and particularly very young children, have less judgment and capacity to avoid danger than adults, that their excursions into a street may reasonably be anticipated, that very young children are innocent and helpless, and that children are entitled to a care in proportion to their incapacity to foresee and avoid peril. [Citations omitted.]

> "Experience demonstrates that children of tender years in or about streets and highways are likely in obedience to impulse to run into or across such streets and highways suddenly and without warning. Motorists must know and recognize this fact and govern themselves accordingly else the criminal and civil laws must be called upon to turn professor." *Fox v. Barlow*, 206 N.C. 66, 173 S.E. 43. In other words, due care may require a motorist in a certain situation to anticipate that a child of tender years unmindful of danger will dart into a street in front of an approaching automobile.

*Pavone v. Merion*, 242 N.C. 594, 594-95, 89 S.E. 2d 108, 108-09 (1955); *see* 30 A.L.R. 2d 1 (1953). Defendant had a duty to take such actions as a reasonably prudent person would take under those circumstances to prevent injury to plaintiff. Such actions might include telling Sebastian not to go into the street, getting out of the car with him, and holding him or preventing him from darting into the street until Mrs. Douglass was able to resume supervision of plaintiff. Defendant failed to so do.

I vote to reverse the directed verdict in favor of defendant Douglass.